1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  KARL VAN LITH,

Case No.  1:16-cv-00066-SKO

10                    Plaintiff,

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION**

11

12          v.

**(Doc. 34)**

13  iHEARTMEDIA + ENTERTAINMENT, INC., et al.,

14

                    Defendants.

15  _____/

16
17

18          Before the Court is Plaintiff's Motion for Preliminary Approval of Class Action Settlement

19  and Provisional Certification of the Class (the "Motion").[1]  (Doc. 34.)  For the reasons provided

20  herein, the Court GRANTS this Motion.  (*Id.*)

21                          ***I.     Background***

22          The class-related claims in this matter arise out of wage statements Defendants provided to

23  Plaintiff and the proposed class members—who are employees of Defendants—which Plaintiff

24  alleges contained inaccurate information.

25  **A.     Procedural Background**

26          Plaintiff filed the currently operative Second Amended Class Action and Individual

27  Complaint (the "Complaint") on August 19, 2016.  (Doc. 28 at 1–22.)  In addition to the

28  _____

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 40–42.)

1  allegations relating solely to Plaintiff, the Complaint also includes California Private Attorney

2  General Act ("PAGA") allegations and class action allegations.  (*See id.* ¶¶ 40–58.)

3      The Complaint includes the following two claims against all Defendants on behalf of the

4  proposed class: (1) First Cause of Action—failure to furnish accurate wage statements in violation

5  of California Labor Code Section 226(a); and (2) Second Cause of Action—failure to maintain

6  accurate wage statements in violation of California Labor Code Section 226(a).  (*Id.* ¶¶ 59–68.)

7  The Complaint also includes the following six claims against all Defendants on behalf of only

8  Plaintiff: (1) Third Cause of Action—failure to pay overtime in violation of California Labor Code

9  Sections 510 and 1198, as well as "the applicable IWC Wage Order(s);" (2) Fourth Cause of

10  Action—failure to pay minimum wage in violation of California Labor Code Section 1197; (3)

11  Fifth Cause of Action—failure to provide rest breaks in violation of California Labor Code

12  Section 226.7 and "[t]he applicable Wage Order(s);" (4) Sixth Cause of Action—failure to provide

13  meal breaks in violation of California Labor Code Sections 226.7 and 512(a), as well as "the

14  applicable Wage Order(s);" (5) Seventh Cause of Action—failure to timely pay wages in violation

15  of California Labor Code Section 204; and (6) Eighth Cause of Action—failure to pay wages upon

16  cessation of employment in violation of California Labor Code Section 203.  (*Id.* ¶¶ 69–100.)

17      The Complaint includes the following requests for relief as to the class action claims: (1)

18  certification of the class; (2) certification of Plaintiff as the class representative; (3) injunctive

19  relief pursuant to California Labor Code Section 226(h); (4) civil and statutory penalties,

20  "including those available under [California] Labor Code [S]ections 226 and 2699(f);" (5)

21  prejudgment and post-judgment interest; and (6) statutory attorneys' fees and costs.  (*Id.* at 21.)

22  As to Plaintiff's individual claims, the Complaint includes the following requests for relief: (1)

23  "compensatory, special, and general damages, including lost wages and related benefits;" (2)

24  "statutory penalties, including those available under [California] Labor Code [S]ections 203,

25  226.7.1194, and 1194.2;" (3) prejudgment and post-judgment interest; and (4) statutory attorneys'

26  fees and costs.  (*Id.* at 21–22.)

27

28

1    Plaintiff filed the Motion on December 22, 2016.  (Doc. 34.)  In his briefing pertaining to

2    the Motion, Plaintiff represents that Defendants do not oppose the Motion.  (*Id.*, Ex. 1 at 8.)

3    Defendants have not filed an opposition to the Motion to date.

4    Plaintiff requests the following extensive relief in the Motion: (1) preliminary and

5    conditional certification of the proposed class; (2) preliminary approval of Plaintiff as the class

6    representative; (3) preliminary approval of Plaintiff's counsel as class counsel; (4) preliminary

7    approval of the proposed settlement agreement as "fair, reasonable and adequate;" (5) approval of

8    the proposed notice to the class members; (6) approval of "the method of notice;" (7) authorization

9    to "disseminat[e]" the proposed notice; (8) appointment and approval of Rust Consulting as the

10   claims administrator; (9) preliminary approval of the payment pertaining to the PAGA claims to

11   the California Labor Workforce Development Agency (the "CLWDA"); (10) preliminary approval

12   of the requested service fee for Plaintiff; (11) preliminary approval of the requested attorneys' fees

13   and costs for the proposed class counsel; (12) "a schedule for the implementation of the terms of

14   the [proposed settlement agreement], including deadlines for the mailing [of] the [notice to class

15   members], the filing of objections and [o]pt-[o]outs, and the filing of papers in connection with the

16   [f]inal [a]pproval [h]earing;" and (13) a date for the final approval hearing.  (*Id.* at 27.)

17   **B.       The Proposed Settlement Agreement**

18   Plaintiff filed the relevant Joint Stipulation re: Class Action Settlement and Release (the

19   "Proposed Settlement Agreement") on February 22, 2017.[2]  (Doc. 49.)  The Proposed Settlement

20   Agreement provides the following pertinent definitions:

21

22   _____

23   [2] On January 25, 2017, the Court held a telephonic hearing regarding the Motion, in which it directed Plaintiff to file
     additional briefing regarding the Motion and a revised proposed settlement agreement and proposed notice to class
24   members.  (Docs. 38 & 39.)  Plaintiff filed the additional briefing and documents on January 31, 2017.  (Doc. 44; *id.*,
     Ex. A.)

25        By its order entered on February 7, 2017, the Court ordered Plaintiff to (1) either file briefing addressing whether
     a certain release provision in the proposed settlement agreement was "not overbroad," or an amended proposed
26   settlement agreement and notice to class members; and (2) file "an amended notice to the proposed class describing
     the class claims in plain, easily understood language."  (Doc. 45 at 3.)  In response, Plaintiff filed an amended
     proposed settlement agreement and proposed notice to class members.  (Doc. 46, *id.*, Ex. A.)
27        On February 17, 2017, the Court held a telephonic conference with the parties regarding the Court's
     remaining concerns as to some release provisions in the proposed settlement agreement, as well as the description of
28   the class claims in the proposed notice to class members.  (Doc. 48.)  Plaintiff then filed the Proposed Settlement
     Agreement on February 22, 2017.  (Doc. 49.)

1.3      "Class Counsel Costs Payment" means the expenses and costs incurred by Class Counsel for Class Counsel's litigation and resolution of this Action, as approved by the Court, which may not exceed Five Thousand Dollars ($5,000).

1.4      "Class Counsel Fees Payment" means the attorneys' fees for Class Counsel's litigation and resolution of this Action, as approved by the Court, which may not exceed Eighty-Five Thousand and Five Hundred Dollars ($85,500).

. . .

1.6      "Class Members" mean all persons employed by Defendants in the State of California during the Class Period who have not signed an individual settlement agreement as of the date of entry of the Court's Preliminary Approval Order. These individuals are members of the class to be conditionally certified by the Court pursuant to this Settlement and will remain members of the Class if they do not properly elect to exclude themselves from this Settlement, pursuant to the terms of this Settlement Agreement.

1.7      "Class Period" means the period from December 7, 2014 through and including the Preliminary Approval Date.

. . .

1.10      "Defendants" means iHeartMedia + Entertainment, Inc. and Capstar Radio Operating Company and iHeartMedia, Inc.

. . .

1.15      "Individual Settlement Payment" means the amount payable from the Net Distribution Fund to each Class Member who does not submit a timely and valid [r]equest for [e]xclusion. The Individual Settlement Payment shall be calculated pursuant to Paragraph 3.5.4 herein and each Class Member will receive at least $25, which is the minimum payment.

1.16      "Net Distribution Fund" means the Total Settlement Amount, less the amount that the Court approves for the PAGA Payment, Plaintiff's Service Payment, Plaintiff's Settlement Payment, the Class Counsel Fees Payment, the Class Counsel Costs Payment, and Settlement Administrator Costs. This amount is estimated at One Hundred Seventy-One Thousand, Five Hundred Dollars ($171,500).

. . .

---

Finally, on March 15, 2017, the Court noted in a communication with the parties that there was a conflict between the proposed settlement agreement and proposed notice to class members as to the description of the class. In response, Plaintiff filed the current proposed notice to the class members on March 16, 2017. (*See* Doc. 50.)

1.19    "PAGA Payment" means the portion of the Total Settlement Amount that is allocated to the PAGA Claims as civil penalties, pursuant to California Labor Code section 2698 *et seq*, and as approved by the Court.  The PAGA Payment is Ten Thousand Dollars ($10,000), seventy-five percent (75%) of which (i.e. $7,500) will be remitted to the [CLWDA] and twenty-five percent (25%) of which (i.e. $2,500) will be distributed to Class Members as part of the Net Distribution Fund.

1.20    "Settled PAGA Claims" means the claims for civil penalties that Plaintiff has settled on behalf of himself and all of Defendants' other current and former employees in the state of California under the Labor Code Private Attorneys General Act of 2004 in exchange for the consideration provided by this Settlement Agreement.  The Settled PAGA Claims include: the right to pursue and/or ability to collect civil money penalties under the PAGA for alleged violations of Labor Code sections 201, 202, 203, 204, 226, 226.7, 510, 512, 558 and 1198.5, including any claim for attorney's fees and costs.  The Settled PAGA Claims do not include other potential claims that may arise under Labor Code sections 201, 202, 203, 204, 226.7, 510, 512, 558 and 1198.5.

. . .

1.25    "Preliminary Approval Order" means the Court's entry of a Preliminary Approval Order preliminarily approving this Settlement . . . .

1.26    "Released Class Claims" means the claims that Plaintiff and Class Members are fully releasing in exchange for the consideration provided by this Settlement Agreement.   The Released Claims include all liabilities and causes of action of every nature and description, whether known or unknown, actually alleged in the Action, or that could have been alleged in the Action based on the allegations in the Second Amended Complaint, related in any way to the wage statements that allegedly failed to comply with Labor Code section 226(a), including claims for statutory penalties and civil penalties, as well as damages, interest and attorney's fees and costs.

1.27    "Released Parties" means Defendants and their past, present and/or future, direct and/or indirect parent companies, subsidiaries, affiliates, related entities, divisions and each of their respective officers, directors, managers, members, heirs, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, predecessors, successors, and/or assigns.

. . .

1.30    "Service Payment" means the amount that the Court approves to be paid to [Plaintiff], for his efforts in assisting with the prosecution of the Action and as consideration for executing this Settlement Agreement and releasing his claims against Defendants in an amount not to exceed Three Thousand Dollars ($3,000).

1.31    "Settlement" or "Settlement Agreement" means the disposition of the Action pursuant to this [Proposed Settlement Agreement].

1.32 "Settlement Administration Costs" means the costs incurred by the Settlement Administrator and approved by the Court from the Total Settlement Amount. Such Settlement Administration Costs may not exceed Fifteen Thousand Dollars ($15,000).

. . .

1.35 "Total Settlement Amount" means Three Hundred Thousand Dollars ($300,000), which is the maximum amount that Defendants are obligated to pay under this Settlement Agreement in order to resolve and settle this Action, subject to the Court's approval.

(Doc. 49 at 3–7.)

Under the terms of the Proposed Settlement Agreement, the Total Settlement Amount of $300,000 is "the maximum amount payable by Defendants." (*Id.* ¶ 3.1.) This is the total amount payable by Defendants under the Proposed Settlement Agreement to resolve all claims, payments, fees, and costs. (*See id.*)

As to the payments for each individual class member, the Proposed Settlement Agreement provides that Individual Settlement Payments "will be paid from the Net Distribution Fund and shall be calculated pursuant to Paragraph 3.5.4 herein." (*Id.* ¶ 3.5.3.) Paragraph 3.5.4, in turn, provides the following as to the calculation of the Individual Settlement Payments:

All Class Members who do not submit a valid and timely [r]equest for [e]xclusion will receive an Individual Settlement Payment which will be at least $25. The amount of the Individual Settlement Payment will be calculated by assigning a dollar value to each pay period worked by all Class Members during the Class Period (who do not submit a timely and valid [r]equest for [e]xclusion from the Settlement), as determined from Class Members' hire, transfer, and termination dates, and payroll/time data found in Defendants' records. More specifically, the dollar value of each pay period will be calculated by dividing the Net Distribution Fund by the total number of pay periods worked by Class Members during the Class Period (rounded up). If a Class Member's Individual Payment is less than $25 than that individual will be paid at least $25. Each Class Member's Individual Settlement Payment will then be determined by multiplying the total number of pay periods the Class Member worked during the Class Period (rounded up) by the dollar value of each pay period (which will be adjusted depending on the number of minimum payments).

(*Id.* ¶ 3.5.4.)

The Proposed Settlement Agreement also provides the following as to attorneys' fees and costs for the class counsel:

Defendants agree to take no position regarding any application or motion by Class Counsel for attorneys' fees not to exceed Eighty-Five Thousand Five-Hundred Dollars ($85,500).  Defendants further agree not to take a position regarding any application or motion by Class Counsel for Attorneys' costs not to exceed Five Thousand Hundred [sic] Dollars ($5,000). . . .  This Settlement is not contingent upon the Court approving Class Counsel any particular amount in attorneys' fees and costs.  In the event that the Court approves less than the full amount requested for the Class Counsel Fees Payment and Class Counsel Costs Payment, the un-approved amount will be made available for distribution to Class Members as part of the Net Distribution Fund.

(*Id.* ¶ 3.5.9.)

Finally, the Proposed Settlement Agreement provides that the parties "stipulate and agree to the certification of this [class action] for purposes of [s]ettlement only."  (*Id.* ¶ 2.2)  The Proposed Settlement Agreement further states that, "[s]hould the [s]ettlement not become final and effective as herein provided, class certification shall immediately be set aside (subject to further proceedings on motion of any [p]arty to certify or deny certification thereafter)."  (*Id.*)

## II.    Legal Background

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

"Procedurally, the approval of a class action settlement takes place in two stages."  *Id.* "In the first stage of the approval process, 'the court preliminarily approve[s] the [s]ettlement pending a fairness hearing, temporarily certifie[s] the [c]lass . . . , and authorize[s] notice to be given to the [c]lass.'"  *Id.* at 658–59 (quoting *West v. Circle K Stores, Inc.*, No. 040438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006)); *see, e.g., Vu v. Fashion Inst. of Design & Merch.*, CASE NO.: CV 14-08822 SJO (Ex), 2016 WL 6211308, at *2 (C.D. Cal. Mar. 22, 2016) ("Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." (alteration in original) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004))).  At this first stage, the court

"'determine[s] whether a proposed class action settlement deserves preliminary approval' and lay[s] the ground work for a future fairness hearing." *Alberto*, 252 F.R.D. at 659 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525).

The second stage—the fairness hearing—occurs "after notice is given to putative class members." *Id.* At this hearing, "the court . . . entertain[s] any . . . objections" from the putative class members as to "(1) the treatment of th[e] litigation as a class action and/or (2) the terms of the settlement." *Id.* (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). "Following the fairness hearing, the court . . . make[s] a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon." *Id.* (citing *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525).

The present preliminary approval stage requires two separate inquiries "where, as here, 'parties reach a settlement agreement prior to class certification.'" *Id.* at 658 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). Specifically, "courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Id.* (alterations in original) (quoting *Staton*, 327 F.3d at 952). The Court shall address both inquiries, in turn.

### III.   *Preliminary Certification*

In the Motion, Plaintiff first requests preliminary and conditional certification of the proposed class. (*See* Doc. 34, Ex. 1 at 14–17.) For the reasons that follow, the Court finds that preliminary certification of the class is appropriate.

**A.    Overview of Analysis**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "To be eligible for certification, the proposed class must be 'precise, objective, and presently ascertainable.'" *Pointer v. Bank of Am. Nat'l Assoc.*, No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *3 (E.D. Cal. Feb. 22, 2016) (quoting *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D. Cal. Apr. 19, 2010)).

1    Further, "[i]n order to justify" use of the class action device, "'a class representative must

2    be part of the class and possess the same interest and suffer the same injury as the class

3    members.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 348–49 (quoting *E. Tex. Motor Freight Sys., Inc.

4    v. Rodriguez*, 431 U.S. 395, 403 (1977)).   Federal Rule of Civil Procedure 23(a) "ensures that the

5    named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."

6    *Id.* at 349.   "Although the parties in this case have stipulated a settlement class exists" solely for

7    purposes of settlement, "the court must nevertheless undertake the Rule 23 inquiry independently,

8    both at this stage and at the later fairness hearing."   *Pointer*, 2016 WL 696582, at *3 (citing *West

9    v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *1–2 (E.D. Cal. June 13, 2006)).

10    Rule 23(a) provides "four threshold requirements applicable to all class actions": (1)

11    "numerosity (a 'class [so large] that joinder of all members is impracticable');" (2) "commonality

12    ('questions of law or fact common to the class');" (3) "typicality (named parties' claims or

13    defenses 'are typical . . . of the class');" and (4) "adequacy of representation (representatives 'will

14    fairly and adequately protect the interests of the class')."   *Amchem Prods., Inc. v. Windsor*, 521

15    U.S. 591, 613 (1997) (quoting Fed. R. Civ. P. 23(a)).   "In addition to satisfying Rule 23(a)'s

16    prerequisites, parties seeking class certification must show that the action is maintainable under

17    Rule 23(b)(1), (2), or (3)."   *Id.* at 614.   "The parties cannot 'agree to certify a class that leaves any

18    one requirement unfulfilled,' and consequently the court cannot blindly rely on the fact that the

19    parties have stipulated that a class exists for purposes of settlement."   *Alberto*, 252 F.R.D. at 658

20    (quoting *Berry v. Baca*, No. 01–02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005)).

21    As to the appropriate level of scrutiny at this preliminary stage, "[f]ederal courts have not

22    provided consistent guidance on the specific Rule 23 standard a plaintiff must satisfy."   *Dearaujo*

23    *v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *6

24    (E.D. Cal. June 30, 2016).   On the one hand, the Supreme Court noted that "[s]ettlement, though a

25    relevant factor, does not inevitably signal that class-action certification should be granted more

26    readily than it would be were the case to be litigated."   *Amchem Prods., Inc.*, 521 U.S. at 620 n.16.

27    Indeed, "proposed settlement classes sometimes warrant more, not less, caution on the question of

28    certification."   *Id.*   As such, a court "[c]onfronted with a request for settlement-only class

certification" should pay "undiluted, even heightened, attention" to the class action requirements, as "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* at 620.

Nonetheless, "despite the Supreme Court's cautions in *Amchem* . . . , a cursory approach appears the norm" when courts address "motion[s] for preliminary approval." *Dearaujo*, 2016 WL 3549473, at *6; *see, e.g.*, Newberg on Class Actions § 11:28 (4th ed.) ("Since *Amchem*, approval of settlement classes is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled." (collecting cases)).  Given this apparent discrepancy, another court in this District recently provided the following excellent discussion regarding a practical approach at the preliminary approval stage:

> To look at the question of an appropriate standard from a practical point of view, if a district court concludes a class may be certified, even conditionally or preliminarily, and if the parties' proposed agreement is fair upon preliminary review, notice will be sent to potential class members.  The danger of an incorrect decision on a motion for preliminary approval and certification is therefore the risk of unnecessary or erroneous class notice: confusion and waste.  If the class is eventually not certified, the previously sent notice will have been a waste, or if the class is later redefined, a revised notice must be sent, which may confuse potential class members. . . .  For these reasons, [the plaintiffs should] bear the burden of persuasion that class notice will not lead to confusion or waste.

*Dearaujo*, 2016 WL 3549473, at *6 (citations omitted).

The Court finds that this practical approach is persuasive, as it avoids the needless expenditure of resources by the parties and respects the parties' desire to settle this litigation at an early stage.  Of course, at the final certification stage, Plaintiff must comply with the full requirements of Rule 23.  *See, e.g., Taylor v. Fedex Freight, Inc.*, No. 13–cv–1137–LJO–BAM, 2015 WL 2358248, at *5 (E.D. Cal. May 15, 2015) ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." (alterations in original) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982))).  Specifically, he "must affirmatively demonstrate his compliance with the Rule" and "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  However,

1  at that juncture, Plaintiff will have the added insight gained by locating potential class members

2  and providing those members an opportunity to opt-out of the litigation or object to the settlement.

3      For these reasons, the Court finds that Plaintiff carries the burden at this early stage to

4  show that preliminary approval of the class—and the ensuing notice to the proposed class—will

5  not lead to confusion or waste.  *See Dearaujo*, 2016 WL 3549473, at *6; *cf. Just Film, Inc. v.*

6  *Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017) ("The party seeking class certification bears the

7  burden of demonstrating that the class meets the requirements of Federal Rule of Civil Procedure

8  23." (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012))); *Mitchinson v.*

9  *Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115,

10  at *4 (E.D. Cal. Dec. 22, 2016) ("On a motion for preliminary approval, plaintiff bears the burden

11  of persuasion that the proposed class satisfies [the] Rule 23 requirements.").  The Court now turns

12  to each of the requirements for class certification.

13  **B.    Existence of a Class**

14      "To be eligible for certification," Plaintiff must first show that "the proposed class . . .

15  exist[s]: it must be 'precise, objective, and presently ascertainable.'"  *Pena v. Taylor Farms Pac.,*

16  *Inc.*, 305 F.R.D. 197, 206 (E.D. Cal. 2015) (quoting *Williams v. Oberon Media, Inc.*, No. 09-8764,

17  2010 WL 8453723, at *2 (C.D. Cal. Apr. 19, 2010)).  "The proposed class definition need not

18  identify every potential class member from the very start."  *Id.* (citations omitted).  Instead, "[a]n

19  adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be

20  identified with particularity.'"  *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593

21  (E.D. Cal. 2008) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.

22  1978)).  "The requirement is a practical one" and "is meant to ensure the proposed class definition

23  will allow the court to efficiently and objectively ascertain whether a particular person is a class

24  member, for example, so that each putative class member can receive notice."  *Pena*, 305 F.R.D.

25  at 206 (citations omitted).

26      Here, the Proposed Settlement Agreement provides the following definition of the

27  proposed class:

28

11

1   "Class Members" mean all persons employed by Defendants in the State of
2   California during the Class Period who have not signed an individual settlement
    agreement as of the date of entry of the Court's Preliminary Approval Order.  These
3   individuals are members of the class to be conditionally certified by the Court
    pursuant to this [Proposed Settlement Agreement] and will remain members of the
4   [c]lass if they do not properly elect to exclude themselves from this [s]ettlement,
    pursuant to the terms of this [Proposed Settlement Agreement].

5   (Doc. 49 ¶ 1.6; *see also id.* ¶ 1.7 (stating that the term "'Class Period' means the period from

6   December 7, 2014 through and including the" date of this Order); *id.* ¶ 1.10 (defining the term

7   "Defendants" as including all three Defendants in this action).)[3]  This definition adequately

8   identifies a distinct and presently ascertainable group of people.  The Court therefore finds that

9   Plaintiff has satisfied the requirement pertaining to the existence of a class.  *Cf.*, *Campbell*, 253

10  F.R.D. at 593 ("The class definition should . . . provide the court with objective criteria to discern

11  the class's members." (citation omitted)).

12  **C.     Numerosity**

13          "To meet the numerosity requirement of Rule 23(a), a class must be 'so numerous that

14  joinder of all members is impracticable.'"  *Scott-George v. PVH Corp.*, No. 2:13-cv-00441-TLN-

15  DAD, 2015 WL 7353928, at *3 (E.D. Cal. Nov. 20, 2015) (quoting Fed. R. Civ. P. 23(a)(1)).  This

16  impracticability requirement "does not equate to impossible."  *Campbell*, 253 F.R.D. at 594

17  (citations omitted).  Instead, this requirement "means only that the court must find that the

18  difficulty or inconvenience of joining all members of the class makes class litigation desirable."

19  *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12–cv–03035–GEB–JFM, 2013 WL

20  4056285, at *4 (E.D. Cal. Aug. 12, 2013) (quoting *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D.

21  Cal. 1981)).

22  _____

23  [3] The Court notes that the parties have provided differing definitions regarding the scope of the class during this case.
    Specifically, the definition of the proposed class in the Complaint cuts off the class as those employed up to "the date
24  of final judgment," (Doc. 28 ¶ 48), whereas the definitions in the Motion and the Proposed Settlement Agreement
    provide a cut-off at the preliminary approval date, (Doc. 34, Ex. 1 at 11; Doc. 49 ¶¶ 1.6 & 1.7).  Additionally, the
    definitions in the Complaint and the Motion include employees of all three Defendants, (Doc. 28 ¶ 48; Doc. 34, Ex. 1
25  at 11), whereas the definition in the parties' previously submitted proposed settlement agreement included the
    employees of only two Defendants—Defendants iHeartMedia + Entertainment, Inc. and Capstar Radio Operating
26  Co.—and *not* the employees of Defendant iHeartMedia, Inc., (*see* Doc. 34, Ex. 2 at 7–8).
            Following several inquiries from the Court, the parties have now clarified that (1) the proposed class includes
27  the employees of all three Defendants, and (2) the cut-off for the proposed class is the date of this Order, rather than
    the date of final judgment.  (*See, e.g.*, Doc. 49 ¶ 1.6; Doc. 50 at 1–2.)  The Court therefore finds that these
28  discrepancies have been resolved and shall proceed with this analysis based on the definition of the proposed class
    provided in the Proposed Settlement Agreement.

1    "The numerosity requirement includes no specific numerical threshold" and "[t]he [c]ourt

2  must examine the specific facts of each case." *Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640,

3  651 (E.D. Cal. 2009) (citing *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  "Although

4  impracticability does not hinge only on the number of members in the putative class, joinder is

5  usually impracticable if a class is 'large in numbers.'" *Campbell*, 253 F.R.D. at 594 (quoting

6  *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982)).  Indeed, "[c]ourts have routinely found

7  the numerosity requirement satisfied when the class comprises 40 or more members." *McKeen-*

8  *Chaplin*, 2013 WL 4056285, at *4 (quoting *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294,

9  300 (E.D. Cal. 2011)); *see, e.g.*, *Andrews Farms*, 258 F.R.D. at 651 ("Generally, 40 or more

10  members will satisfy the numerosity requirement." (citing *Consol. Rail Corp. v. Town of Hyde*

11  *Park*, 47 F.3d 473, 483 (2d Cir. 1995))); *cf. Campbell*, 253 F.R.D. at 594 ("While there is no set

12  number of members required, courts have generally found classes numbering in the hundreds to be

13  sufficient to satisfy the numerosity requirement." (citations omitted)).

14         In the present case, the proposed class would include all employees of Defendants in the

15  State of California from December 7, 2014 through and including the date of this Order "who have

16  not signed" a separate "individual settlement agreement."  (Doc. 49 ¶ 1.6.)  Plaintiff estimates that

17  the class will consist of 477 members.  (Doc. 34, Ex. 1 at 16.)  The Court finds that this potential

18  class size satisfies the numerosity requirement.  *See, e.g.*, *Mitchinson v. Love's Travel Stops &*

19  *Country Stores, Inc.*, No. 1:15-cv-01474, 2016 WL 7426115, at *4 (E.D. Cal. Dec. 22, 2016)

20  (finding "that [a] potential class consist[ing] of 430 members" was "sufficient to satisfy the

21  numerosity requirement of Rule 23(a)(1)").

22  **D.     Commonality**

23         "To meet the commonality requirement, there must be 'questions of law or fact common to

24  the class.'" *Scott-George*, No. 2015 WL 7353928, at *4 (citing Fed. R. Civ. P. 23(a)).

25  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same

26  injury," and "not . . . merely that they have all suffered a violation of the same provision of law."

27  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation omitted).  "Quite

28  obviously, the mere claim by employees of the same company that they have suffered" an injury

1    that falls under a particular statute "gives no cause to believe that all their claims can productively

2    be litigated at once." *Id.* at 350.  Instead, "[t]heir claims must depend upon a common contention"

3    that is "of such a nature that it is capable of classwide resolution—which means that determination

4    of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

5    one stroke." *Id.*  Thus, "[w]hat matters to class certification . . . is not the raising of common

6    questions—even in droves—but, rather the capacity of a classwide proceeding to generate

7    common *answers* apt to drive the resolution of the litigation." *Id.* (second and third alterations in

8    original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84

9    N.Y.U. L. Rev. 97, 132 (2009)).

10       Nonetheless, "Plaintiffs need not show that every question in the case, or even a

11   preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News,*

12   *Inc.*, 737 F.3d 538, 544 (9th Cir. 2013).  "So long as there is 'even a single common question,' a

13   would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Id.* (quoting *Wal-Mart*

14   *Stores, Inc.*, 564 U.S. at 359).

15       Here, Plaintiff's claims include a central nucleus of fact and law to those of the potential

16   class members.  Namely, the resolution of Plaintiff's claims will include determinations as to (1)

17   "[w]hether Defendants furnished wage statements containing the name of the legal entity that is

18   the employer as required by Labor Code section 226(a)(8);" and (2) "[w]hether Defendants

19   maintained wage statements containing all of the information required by Labor Code section

20   226(a)." (Doc. 28 ¶ 52.)  Like Plaintiff, the proposed class members are employees of Defendants

21   who received wage statements from these entities. (*See, e.g.*, *id.* ¶ 63 & 67.)  As such, they would

22   similarly be impacted by these purported practices or failures by Defendants.  Thus, there is at

23   least a single common question between Plaintiff and the proposed class members that will be

24   resolved by this litigation.  The Court therefore finds that, at this preliminary stage, these common

25   questions and answers satisfy the commonality requirement.  *See, e.g.*, *Taylor v. Fedex Freight,*

26   *Inc.*, No. 13–cv–1137–LJO–BAM, 2015 WL 2358248, at *7 (E.D. Cal. May 15, 2015) (finding

27   "that the commonality requirement [was] satisfied . . . because [the plaintiff] challenge[d] uniform

28   policies and systemic practices that apply uniformly to this class of employees").

**E.     Typicality**

"Typicality requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 595 (E.D. Cal. 2008) (quoting Fed. R. Civ. P. 23(a)(3)).   "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (citation omitted).

"For typicality to be met, plaintiffs need not possess identical claims to those of the putative class members." *Campbell*, 253 F.R.D. at 595 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).   Instead, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.   "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (citation omitted); *see, e.g.*, *Scott-George v. PVH Corp.*, No. 2:13-cv-00441-TLN-DAD, 2015 WL 7353928, at *7 (E.D. Cal. Nov. 20, 2015) ("It is sufficient that the class representative is 'part of the class and possess[es] the same interest and suffer[s] the same injury as the class members.'" (alterations in original) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982))).   "A court should not certify a class if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Hanon*, 976 F.2d at 508).

As the Supreme Court has noted, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011) (alteration in original) (quoting *Falcon*, 457 U.S. at 157 n.13).   Specifically, "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that

1    the interests of the class members will be fairly and adequately protected in their absence." *Id.*

2    (quoting *Falcon*, 457 U.S. at 157 n.13).

3         In this case, Plaintiff asserts that some of his claims and injury are identical to those of the

4    proposed class members.  In particular, Plaintiff contends "that Defendants failed to furnish and

5    maintain accurate itemized wage statements" as to all of the class members, including Plaintiff,

6    and each class member suffered the same type of injuries arising out of these claims.  (*See* Doc. 44

7    at 5–6.)  At this preliminary stage, the Court finds that these assertions are sufficient to satisfy the

8    typicality requirement.  *See, e.g.*, *Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 WL

9    1161504, at *6 (N.D. Cal. Mar. 23, 2016) (finding that the typicality requirement was satisfied

10   where the named plaintiff's "claims arise from the format of the wage statements . . . , which . . .

11   was common across all members of the putative class"); *McKenzie v. Fed. Express Corp.*, 275

12   F.R.D. 290, 297 (C.D. Cal. 2011) (finding that the typicality requirement was met where the

13   named plaintiff's claims relating to wage statements were "identical to the claims of the other

14   class members" and were "based on the same conduct by [the defendant]—issuing defective wage

15   statements").

16   **F.      Adequacy of Representation**

17        "Adequacy of representation requires that 'representative parties will fairly and adequately

18   protect the interests of the class.'"  *Campbell*, 253 F.R.D. at 596 (quoting Fed. R. Civ. P. 23(a)(4)).

19   "The proper resolution of this issue requires that two questions be addressed . . . ."  *In re Mego*

20   *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  First, "do the named plaintiffs and their

21   counsel have any conflicts of interest with other class members?"  *Id.*  Second, "will the named

22   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id.*  "These

23   questions involve consideration of a number of factors, including 'the qualifications of counsel for

24   the representatives, an absence of antagonism, a sharing of interests between representatives and

25   absentees, and the unlikelihood that the suit is collusive.'"  *Morales v. Conopco, Inc.*, CIV. NO.

26   2:13-2213 WBS EFB, 2016 WL 3688407, at *3 (E.D. Cal. July 12, 2016) (quoting *Brown v. Ticor*

27   *Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992)).

28        1.      Conflicts of Interest

16

1      As to the first question—conflicts of the named plaintiff and counsel—Plaintiff states that

2   his "interests in prosecuting this . . . [a]ction and obtaining the most beneficial recovery possible

3   fully comport with the interests of the [c]lass [m]embers." (Doc. 34, Ex. 1 at 16.)  Additionally,

4   there is no indication in the record that Plaintiff's interests are not generally aligned with those of

5   the potential class, with one potential exception.  In particular, there is a slight potential for a

6   conflict in the form of an incentive payment to Plaintiff for prosecuting this action that is "not to

7   exceed [t]hree [t]housand [d]ollars." (Doc. 49 ¶ 3.5.7.)

8      "Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has

9   disclaimed any right to a preferred position in the settlement.'"  *Staton v. Boeing Co.*, 327 F.3d

10   938, 976 (9th Cir. 2003) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,

11   688 F.2d 615, (9th Cir. 1982)).  "Were that not the case, there would be considerable danger of

12   individuals bringing cases as class actions principally to increase their own leverage to attain a

13   remunerative settlement for themselves and then trading on that leverage in the course of

14   negotiations." *Id.*

15      "Nevertheless, named plaintiffs, as opposed to designated class members who are not

16   named plaintiffs, are eligible for reasonable incentive payments." *Id.* at 977.  However, "district

17   courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

18   adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164

19   (9th Cir. 2013).

20      In the present case, the potential $3,000 incentive award is within the range that courts

21   have found reasonable.  *See, e.g.*, *Morales*, 2016 WL 3688407, at *4 ("Courts have generally

22   found that $5,000 incentive payments are reasonable." (citations omitted)).  Furthermore, this

23   incentive award is not unnecessarily disproportionate to the average payment for each potential

24   class member, which Plaintiff estimates will be $354.  (Doc. 34, Ex. 1 at 12.)  As such, this

25   incentive award does not appear on its face to present a conflict that would cause Plaintiff's

26   interests to impermissibly deviate from those of the prospective class members.

27      Regarding Plaintiff's counsel, Plaintiff states that his counsel does not hold any interests

28   that are adverse to those of the potential class members.  (Doc. 44 at 4.)  Further, there is no

17

1  present indication in the record that Plaintiff's counsel holds any conflict of interest with the

2  proposed class members.  As such, the Court finds that the requirement pertaining to conflicts of

3  counsel is satisfied for purposes of the instant preliminary analysis.  *See, e.g.*, *Mitchinson v. Love's*

4  *Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *5

5  (E.D. Cal. Dec. 22, 2016) (finding that the plaintiff "satisfie[d] the adequacy of representation

6  requirement" where, in pertinent part, "[t]here [was] nothing in the record suggesting that plaintiff

7  or counsel ha[d] any conflicts of interest with other absent class members").

8         For these reasons, the Court finds that the first requirement pertaining to adequacy of

9  representation is satisfied here.  The Court now turns to the second inquiry.

10        2.      Vigorous Representation

11        The "second adequacy inquiry is directed to the vigor with which the named

12  representatives and their counsel will pursue the common claims."  *Hanlon v. Chrysler Corp.*, 150

13  F.3d 1011, 1021 (9th Cir. 1998).  "Although there are no fixed standards by which 'vigor' can be

14  assayed, considerations include competency of counsel and, in the context of a settlement-only

15  class, an assessment of the rationale for not pursuing further litigation."  *Id.*  On the latter point,

16  "[d]istrict courts must be skeptical of some settlement agreements put before them because they

17  are presented with a 'bargain proffered for . . . approval without benefit of an adversarial

18  investigation.'"  *Id.* (second alteration in original) (quoting *Amchem Prods., Inc. v. Windsor*, 521

19  U.S. 591, 593 (1997)).  "These concerns warrant special attention when the record suggests that

20  settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the

21  settlement, or when the class receives no monetary distribution but class counsel are amply

22  rewarded."  *Id.*

23        The record in this case indicates that class counsel is competent.  Specifically, Plaintiff's

24  counsel currently "represent[s] plaintiffs in at least nine employment class action cases and

25  approximately 30" cases similarly alleging violations under PAGA.  (Doc. 34, Ex. 2 at 3.)  Absent

26  any indication to the contrary, the Court finds that the competence requirement is satisfied.

27        As to the vigor of representation, Plaintiff represents that his counsel "conducted a

28  thorough investigation into the facts and claims alleged in this case," analyzed and reviewed

1   "nearly 700 pages" of documents produced by Defendants, and engaged in at least one deposition.

2   (Doc. 44 at 2–3.)  Further, Plaintiff states that the parties engaged in "adversarial, non-collusive,

3   and . . . arms' length" negotiations over a period of four months.  (*Id.* at 3.)  Finally, Plaintiff's

4   counsel states that he "strongly believe[s] that the proposed settlement . . . is preferable to

5   continued litigation," as continuing with the litigation "is guaranteed to be costly, time consuming

6   and uncertain" because counsel "anticipate[s] a vigorous and lengthy challenge to . . . class

7   certification," "the merits of the [c]lass [a]ction," and appeals of "adverse rulings."  (Doc. 34, Ex.

8   2 at 3.)

9       The Court finds that the parties' efforts in discovery, the protracted settlement discussions,

10  the opinion of Plaintiff's counsel regarding the merits of settlement, and Plaintiff's counsel's

11  assertion regarding the costs and risks of continuing the litigation cumulatively satisfy the

12  requirement pertaining to vigorous representation.  *See, e.g.*, *Robinson v. Paramount Equity*

13  *Mortg., LLC*, No. 2:14-cv-02359-TLN-CKD, 2017 WL 117941, at *5 (E.D. Cal. Jan. 10, 2017)

14  (finding that the requirement relating to vigorous representation was satisfied where, in pertinent

15  part, the plaintiff's counsel had "extensive experience in . . . class action litigation," they "devoted

16  significant resources to investigating and prosecuting the case," and they provided a declaration in

17  which they state "that settlement was the right course" given the costs and risks associated with

18  continuing the litigation).

19      In summary, the Court finds that each of the Requirements under Rule 23(a) are satisfied

20  for purposes of the present preliminary determination.  The Court now turns to the remaining

21  requirements of Rule 23.

22  **G.     The Requirements of Rule 23(b)(3)**

23      "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must

24  show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods., Inc. v.*

25  *Windsor*, 521 U.S. 591, 614 (1997); *see, e.g.*, *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No.

26  2:12–cv–03035–GEB–JFM, 2013 WL 4056285, at *2 (E.D. Cal. Aug. 12, 2013) ("A party seeking

27  class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the

28  requirements of at least one of the categories under Rule 23(b)." (citation omitted)).  In the present

1    case, Plaintiff asserts that the class action format is appropriate under Rule 23(b)(3).  (Doc. 34, Ex.

2    1 at 17.)

3         "Framed for situations in which class-action treatment is not as clearly called for as it is in

4    Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may

5    nevertheless be convenient and desirable."  *Amchem Prods., Inc.*, 521 U.S. at 615 (citation

6    omitted).  "[A] class must meet two requirements beyond the Rule 23(a) prerequisites" to "qualify

7    for certification under Rule 23(b)(3)": (1) "[c]ommon questions must 'predominate over any

8    questions affecting only individual members;'" and (2) "class resolution must be 'superior to the

9    other available methods for the fair and efficient adjudication of the controversy.'"  *Id.* (quoting

10   Fed. R. Civ. P. 23(b)(3)).  "Rule 23(b)(3) includes" the following "nonexhaustive list of factors

11   pertinent to a court's 'close look' at the predominance and superiority criteria": (1) "the interest of

12   members of the class in individually controlling the prosecution or defense of separate actions;"

13   (2) "the extent and nature of any litigation concerning the controversy already commenced by or

14   against members of the class;" (3) "the desirability or undesirability of concentrating the litigation

15   of the claims in the particular forum;" and (4) "the difficulties likely to be encountered in the

16   management of a class action."  *Id.* at 615–16 (citation omitted).  However, when "[c]onfronted

17   with a request for settlement-only class certification, a district court need not inquire whether the

18   case, if tried, would present intractable management problems, for the proposal is that there be no

19   trial."  *Id.* at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

20        1.   Predominance

21        "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

22   cohesive to warrant adjudication by representation."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

23   1021 (9th Cir. 1998) (quoting *Amchem Prods., Inc.*, 521 U.S. at 623).  "Implicit in the satisfaction

24   of the predominance test is the notion that the adjudication of common issues will help achieve

25   judicial economy."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)

26   (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)).  "While this

27   requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher

28   at this stage of the analysis."  *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-

cv-01474-DAD-BAM, 2016 WL 7426115, at *6 (E.D. Cal. Dec. 22, 2016) (citations omitted); *see, e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013))).  "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022.  "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.*

Ultimately, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation omitted).  "Settlement benefits cannot form part of a Rule 23(b)(3) analysis; rather the examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" *Id.* (quoting *Amchem*, 521 U.S. at 623).

Plaintiff asserts that common questions predominate in this action, as each member of the proposed class "received the same type of wage statements from Defendants that Plaintiff contends were inaccurate" and all class members "could seek the same penalties" for Defendants' alleged conduct. (Doc. 34, Ex. 1 at 17.)  These assertions support a finding of predominance. *See, e.g.*, *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (finding that the predominance inquiry was satisfied where the plaintiffs "established" that the defendant "failed to record meal breaks" or provide members of the class "with accurate itemized wage statements" and the defendant did not otherwise "dispute [the] plaintiffs' allegation that these are class-wide practices").

The Court notes that the settlement payment may present individualized issues insofar as each member of the proposed class will receive individualized settlement payments.  However, "individual issues regarding damages will not, by themselves, defeat certification under Rule 23(b)(3)." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 664 (E.D. Cal. 2008) (citation omitted).  Further, to the extent there are "idiosyncratic differences" between the facts applicable to each

1    proposed class member, those differences "are not sufficiently substantive to predominate over the

2    shared claims." *Id.* (citation omitted).

3         Based on the foregoing, the Court finds that the predominance requirement is satisfied for

4    purposes of this preliminary determination.  Nonetheless, of course, "[t]hese claims must . . . be

5    substantiated by evidence before the class is certified." *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-

6    01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *8 (E.D. Cal. June 30, 2016).

7         2.   <u>Superiority</u>

8         "Rule 23(b)(3) also requires that class resolution must be 'superior to other available

9    methods for the fair and efficient adjudication of the controversy.'" *Hanlon v. Chrysler Corp.*,

10   150 F.3d 1011, 1023 (9th Cir. 1998).  "The superiority inquiry under Rule 23(b)(3) requires

11   determination of whether the objectives of the particular class action procedure will be achieved in

12   the particular case."  *Id.* (citation omitted).   "This determination necessarily involves a

13   comparative evaluation of alternative mechanisms of dispute resolution." *Id.*  "If a class action is

14   not superior, then individual actions must carry the day." *Just Film, Inc.*, 847 F.3d at 1123.

15        Here, each member of the potential class would potentially receive a relatively modest sum

16   of money—an average of $354.  (Doc. 34, Ex. 1 at 12.)  "Given the small size of each class

17   member's claims in this situation, class treatment is not merely the superior, but the only manner

18   in which to ensure fair and efficient adjudication of the present action." *Scott-George v. PVH*

19   *Corp.*, No. 2:13-cv-00441-TLN-DAD, 2015 WL 7353928, at *11 (E.D. Cal. Nov. 20, 2015); *see,*

20   *e.g.*, *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is

21   not economically feasible to obtain relief within the traditional framework of a multiplicity of

22   small individual suits for damages, aggrieved persons may be without any effective redress unless

23   they may employ the class-action device.").  Additionally, the Court is not aware of any additional

24   actions involving the proposed class members that may indicate that a class action in the present

25   case would harm these members' interests.  As such, the interests of the class members favor use

26   of the class action device. *See, e.g.*, *Scott-George*, 2015 WL 7353928, at *11.

27        Furthermore, "each member of the class pursuing a claim individually would burden the

28   judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23."

1   *Id.* (citation omitted).  It is therefore desirable to concentrate all of the proposed class members'

2   claims in a single forum and action.  For these reasons, the Court finds that the superiority inquiry

3   is satisfied in this case.

4         In summary, the Court finds that each pertinent requirement of Rule 23 is satisfied at this

5   preliminary stage.  The Court therefore finds that "publication of class notice is unlikely to lead to

6   confusion or waste," *Dearaujo*, 2016 WL 3549473, at *9, and preliminary certification of the

7   proposed class is appropriate.

8                    ***IV.    Preliminary Approval of Settlement***

9         The Court shall now address the fairness of the proposed settlement.  *See, e.g.*, *Alberto v.*

10  *GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) ("[W]here . . . 'parties reach a settlement

11  agreement prior to class certification, courts must peruse the proposed compromise to ratify both

12  [1] the propriety of the certification and [2] the fairness of the settlement.'" (third and fourth

13  alterations in original) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003))).  For the

14  following reasons, the Court preliminarily approves the settlement.

15  **A.      Overview of Analysis**

16        Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

17  certified class may be settled, voluntarily dismissed, or compromised only with the court's

18  approval."  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust

19  or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th

20  Cir. 2008) (citation omitted).

21        "It is the settlement taken as a whole, rather than the individual component parts, that must

22  be examined for overall fairness."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

23  (citation omitted).  The district court does not "have the ability to delete, modify or substitute

24  certain provisions."  *Id.* (citation omitted).  Instead, "[t]he settlement must stand or fall in its

25  entirety."  *Id.* (citation omitted).

26        In determining whether a settlement is "fundamentally fair, adequate, and reasonable," the

27  district court must "balance[e] . . . several factors which may include, among others, some or all

28  of" the following: (1) "the strength of plaintiffs' case;" (2) "the risk, expense, complexity, and

likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed;" (6) "the stage of the proceedings;" (7) "the experience and views of counsel;" (8) "the presence of a governmental participant;" and (9) "the reaction of the class members to the proposed settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted). However, as "some of the aforementioned 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing, 'a full fairness analysis is unnecessary at this stage.'" *Pierce v. Rosetta Stone, Ltd.*, No. C 11–01283 SBA, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013) (quoting *Alberto*, 252 F.R.D. at 665); *cf. Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) ("[W]here the court is '[c]onfronted with a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010))).

Instead of an analysis regarding some or all of the fairness factors, "preliminary approval of a settlement" requires analyzing both "procedural and substantive component[s]." *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *6 (E.D. Cal. Dec. 22, 2016) (alteration in original) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if": (1) "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations;" and (2) "the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class." *Id.* (citing *In re Tableware*, 484 F. Supp. 2d at 1079).

In engaging in this analysis, "[t]he court need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th

Cir. 1982)).  "At the preliminary approval stage, the initial evaluation can be made on the basis of information [contained in] briefs, motions, or informal presentations by parties, and the [c]ourt need not review the settlement in detail." *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *10 (E.D. Cal. June 30, 2016) (citations omitted). Finally, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice*, 688 F.2d at 625 (citations omitted).

## B.    Settlement Process

"The first factor relevant to the court's preliminary approval of settlement addresses the means by which the parties reached the proposed settlement." *Mitchinson*, 2016 WL 7426115, at *7 (citation omitted).  Plaintiff states that the parties engaged in "adversarial, non-collusive, and . . . arms' length" negotiations over a period of four months following substantial initial and document discovery.  (Doc. 44 at 3; *see also* Doc. 34, Ex. 1 at 21 (providing Plaintiff's statement that the proposed settlement "is the result of protracted arms-length negotiations by experienced counsel, after extensive discovery and . . . at times contentious settlement negotiations").)  The adversarial nature of these negotiations and the discovery performed by the parties indicate that the settlement process is procedurally adequate.  *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (noting that the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *West v. Circle K Stores, Inc.*, No CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006) (finding that a proposed settlement agreement was adequate at the preliminary approval stage where, in pertinent part, "the stipulation and settlement appear to be, for the most part, the result of vigorous, arms-length bargaining" following "over two years" of "active[] litigation," which included counsel "diligently pursu[ing] the necessary discovery").  The Court therefore finds that, at this preliminary stage, the proposed settlement appears to be the product of serious, informed, and arms-length negotiations.

## C.    Range of Possible Approval

The next pertinent consideration is whether the settlement falls within the range of possible approval.  "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced

1   against the value of the settlement offer." *Pierce v. Rosetta Stone, Ltd.*, No. C 11–01283 SBA,

2   2013 WL 1878918, at *5 (N.D. Cal. May 3, 2013) (quoting *In re Tableware Antitrust Litig.*, 484

3   F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)); *see, e.g.*, *Mitchinson v. Love's Travel Stops & Country*

4   *Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *7 (E.D. Cal. Dec. 22, 2016)

5   ("To evaluate the fairness of the settlement award, the court should compare the terms of the

6   compromise with the likely rewards of litigation." (citation omitted)).   However, "[i]t is well-

7   settled law that a cash settlement amounting to only a fraction of the potential recovery does not

8   per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

9   454, 459 (9th Cir. 2000) (citation omitted).   "Rather, the fairness and the adequacy of the

10  settlement should be assessed relative to the risks of pursuing the litigation to judgment." *Pierce*,

11  2013 WL 1878918, at *5 (citing *In re Mego*, 213 F.3d at 459).

12      In this case, Plaintiff notes that the proposed class could receive a larger award, including

13  "penalties . . . of approximately $100 per wage statement."  (Doc. 34, Ex. 1 at 21.)   However,

14  Plaintiff acknowledges that "recovery is far from guaranteed and could only occur after years of

15  costly litigation that is rife with risk." (*Id.*)  Ultimately, Plaintiff states that his counsel "strongly

16  believe[s] that the proposed [s]ettlement [a]greement is a fair, adequate, and reasonable resolution

17  of the [case] and is preferable to continued litigation." (*Id.* at 22.)

18      At this juncture, the Court has little information regarding the potential recovery, or the

19  potential merits of the proposed class's claims.  Nonetheless, for the present preliminary purposes,

20  Plaintiff's counsel's representations that continued litigation presents serious risk and their support

21  of the settlement sufficiently indicate that the proposed settlement lies within the range of possible

22  approval.  *See, e.g.*, *In re Tableware*, 484 F. Supp. 2d at 1080 ("Based on th[e] risk and the

23  anticipated expense and complexity of further litigation, the court cannot say that the proposed

24  settlement is obviously deficient or is not within the range of possible approval." (citation

25  omitted)); *Vanwagoner v. Siemens Indus., Inc.*, No. 2:13–cv–01303–KJM–EFB, 2014 WL

26  1922731, at *7 (E.D. Cal. May 14, 2014) (addressing the preliminary approval of a class-action

27  settlement and stating that "[g]reat weight is accorded the recommendation of counsel, who are

28  most closely acquainted with the facts of the underlying litigation" (quoting *Gribble v. Cool*

*Transps., Inc.*, No. CV–06–04863, 2008 WL 5281665, at *9 (C.D. Cal. 2008))). The Court therefore finds that the Proposed Settlement Agreement is within the range of possible approval for present purposes.

**D. No Obvious Deficiencies**

The next "factor considers whether there are any obvious deficiencies with the proposed settlement." *Pierce*, 2013 WL 1878918, at *5. There are no obvious deficiencies with the Proposed Settlement Agreement, with one possible exception—attorneys' fees.[4] The Proposed Settlement Agreement provides, in relevant part, that "[D]efendants agree to take no position regarding any application or motion by [c]lass [c]ounsel for attorneys' fees not to exceed . . . $85,500." (Doc. 49 ¶ 3.5.9.) These attorneys' fees are part of the "Total Settlement Amount" of $300,000. (*Id.* ¶ 3.1.) In other words, attorneys' fees are part of the overall pool of money Defendants will pay. (*See id.*) As such, "[i]n the event that the Court approves less than the full amount requested for the Class Counsel Fees Payment and Class Counsel Costs Payment the un-approved amount will be made available for distribution to [c]lass [m]embers as part of the Net Distribution Fund." (*Id.* ¶ 3.5.9.)

The cited attorneys' fees amount of $85,500 constitutes 28.50% of the total settlement amount of $300,000. This percentage is greater than the benchmark rate of 25% in the Ninth Circuit. *See, e.g.*, *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (noting that the Ninth Circuit "established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach" (citations omitted)). Nonetheless, the proposed percentage of fees is within "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit [of] 20% to 33 1/3% of the total settlement value." *Morales v. Stevco, Inc.*, No.

---

[4] The Court notes that the parties' initial proposed settlement agreement included a "Released Claims" provision that provided for class members releasing claims that extended far beyond the class-related allegations and claims in the instant matter. (*See* Doc. 34, Ex. 2 at 11.) By its order entered on February 7, 2017, the Court noted that "[t]his release provision . . . appear[ed] to be impermissibly overbroad." (Doc. 45 at 2.) The Court also held a telephonic conference with the parties on February 17, 2017 to discuss this release provision, as well as a release provision related to the PAGA allegations. (*See* Doc. 48.) The parties subsequently filed a revised settlement agreement, (*see* Doc. 49), and proposed notice to class members, (*see* Doc. 50).

The Court finds that these revised and currently operative submissions, (*see* Doc. 49; Doc. 50), resolve the Court's previous concerns regarding the breadth of the "Released Claims" provision, as well as the release pertaining to the PAGA allegations. As such, these release provisions no longer present obvious deficiencies for purposes of the instant analysis.

1:09–cv–00704 AWI JLT, 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011) (citing *Powers*, 229 F.3d at 1256). Further, the proposed arrangement that any difference between the proposed fees and the awarded fees will revert to the class settlement amount "signals the opposite" of collusion. *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *12 (E.D. Cal. June 30, 2016); *see, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting that one "sign[]" of collusion is "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund" (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004))). As such, the proportion of the attorneys' fees relative to the total settlement amount and the reversion provision both indicate that the proposed attorneys' fees are permissible.

The Court also notes that the Proposed Settlement Agreement includes a clear sailing provision whereby Defendants will not object to attorneys' fees up to a certain amount. (*See* Doc. 49 ¶ 3.5.9.) *See generally In re Toys R Us-Del., Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991))). Clear sailing provisions may implicate collusion insofar as their "very existence . . . increases the likelihood that class counsel will have bargained away something of value to the class." *In re Bluetooth*, 654 F.3d at 948 (citation omitted). "Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested." *Id.* (citation omitted).

Nonetheless, the risk of collusion presented by the clear sailing provision is mitigated in this case. The Proposed Settlement Agreement provides that any "un-approved" attorneys' fees will be distributed to the class members "as part of the [n]et [d]istribution [f]und." (Doc. 49 ¶ 3.5.9.) As such, the clear sailing provision in the Proposed Settlement Agreement "does not signal the possibility of collusion" because "both payments [are] to be made from the settlement fund,"

1    thereby demonstrating that Defendants are "acting consistently with their own interests in

2    minimizing liability." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)

3    (citation omitted); *see, e.g.*, *In re Toys R Us*, 295 F.R.D. at 458 ("As the Ninth Circuit has noted . .

4    . the inference of collusion drawn from a clear sailing provision is reduced when the agreement

5    lacks a reversionary or 'kicker provision.'" (quoting *In re Bluetooth*, 654 F.3d at 949)); *cf. In re*

6    *Bluetooth*, 654 F.3d 949 ("[A] kicker arrangement reverting unpaid attorneys' fees to the

7    defendant rather than to the class amplifies the danger of collusion already suggested by a clear

8    sailing provision.").

9         Finally, the Court notes that there is no present indication in the record that class counsel

10   does not have the best interests of the class in mind.  As such, the Court finds that the proposed

11   attorneys' fees do not present an impediment to preliminary approval of the settlement.  *See, e.g.*,

12   *Dearaujo*, 2016 WL 3549473, at *11.  The Court therefore finds that the Proposed Settlement

13   Agreement does not present any obvious deficiencies.

14        Of course, "[b]ecause in common fund cases the relationship between plaintiffs and their

15   attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding

16   attorneys' fees from a common fund, the district court must assume the role of fiduciary for the

17   class plaintiffs." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (quoting *In re*

18   *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)).  "Accordingly, fee

19   applications must be closely scrutinized" and "[r]ubber-stamp approval, even in the absence of

20   objections, is improper." *Id.*

21        "At the final approval stage, the court will determine the exact amount of the fee award by

22   considering the circumstances of the case," *Dearaujo*, 2016 WL 3549473, at *11, including the

23   following non-exhaustive factors: "(1) the results achieved; (2) the risks of litigation; (3) the skill

24   required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by

25   class counsel; and (6) the awards made in similar cases," *Monterrubio v. Best Buy Stores, L.P.*,

26   291 F.R.D. 443, 456 (E.D. Cal. 2013) (citing *Vizcaino*, 290 F.3d at 1048).  "Calculation of the

27   lodestar may also serve as a cross-check of the reasonableness of the requested percentage award."

28   *Dearaujo*, 2016 WL 3549473, at *11 (citing *Vizcaino*, 290 F.3d at 1052); *see, e.g.*, *Mitchinson v.*

1   *Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115,

2   at *9 (E.D. Cal. Dec. 22, 2016) (noting that the "Ninth Circuit has recommended that district

3   courts apply" either the "percentage of the fund" method or the "lodestar" method, "but cross-

4   check the appropriateness of the amount by employing the other as well" (citing *In re Bluetooth*,

5   654 F.3d at 944)).

6   **E.      Preferential Treatment**

7        "Under the [final] factor, the Court examines whether the settlement agreement provides

8   preferential treatment to any class member." *Pierce v. Rosetta Stone, Ltd.*, No. C 11–01283 SBA,

9   2013 WL 1878918, at *6 (N.D. Cal. May 3, 2013).   In this case, each member of the proposed

10  class will receive a proportion of the Net Distribution Fund—not below $25—based on the

11  number of pay periods they worked for Defendants between December 7, 2014 and the date of this

12  Order.  (*See* Doc. 49 ¶ 3.5.4.)  This is an appropriate method for determining payments.  *See, e.g.*,

13  *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL

14  3549473, at *12 (E.D. Cal. June 30, 2016) (finding at the preliminary approval stage that a

15  "mechanism for distributing the settlement funds proportionally based on the total number of

16  weeks worked" was "reasonable").

17       As noted previously, the Proposed Settlement Agreement provides for a service fee "not to

18  exceed [t]hree [t]housand [d]ollars" for Plaintiff in his role as class representative.  (Doc. 49 ¶

19  3.5.7.)  Of course, "named plaintiffs, as opposed to designated class members who are not named

20  plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938,

21  977 (9th Cir. 2003).  "At the final approval stage, the court will assess whether the requested

22  incentive payment is excessive by balancing," *Dearaujo*, 2016 WL 3549473, at *11, the following

23  non-exhaustive list of considerations: (1) "the actions the plaintiff has taken to protect the interests

24  of the class;" (2) "the degree to which the class has benefitted from those actions;" (3) "the

25  amount of time and effort the plaintiff expended in pursuing the litigation;" and (4) "and

26  reasonabl[e] fear[s of] workplace retaliation,'" *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*,

27  142 F.3d 1004, 1016 (7th Cir. 1998)).  Nonetheless, based on the foregoing, the Court finds that

28

1   the inquiry pertaining to preferential treatment does not preclude preliminary approval of the

2   Proposed Settlement Agreement.

3        In summary, the Court finds that the Proposed Settlement Agreement is both procedurally

4   and substantively fair for purposes of the present preliminary approval stage.  As such, the Court

5   finds that preliminary approval of the Proposed Settlement Agreement is appropriate.

6                          *V.    Notice to Class Members*

7        Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a

8   reasonable manner to all class members who would be bound by the proposal."  "Adequate notice

9   is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp.*, 150

10  F.3d 1011, 1025 (9th Cir. 1998).

11       Where, as here, parties propose to certify a class under Rule 23(b)(3), "the court must

12  direct to class members the best notice that is practicable under the circumstances, including

13  individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.

14  23(c)(2)(B).  "The notice must clearly and concisely state" the following "in plain, easily

15  understood language": (1) "the nature of the action;" (2) "the definition of the class certified;" (3)

16  "the class claims, issues, or defenses;" (4) "that a class member may enter an appearance through

17  an attorney if the member so desires;" (5) "that the court will exclude from the class any member

18  who requests exclusion;" (6) "the time and manner for requesting exclusion;" and (7) "the binding

19  effect of a class judgment on members under Rule 23(c)(3)."  *Id.*  "Notice is satisfactory if it

20  'generally describes the terms of the settlement in sufficient detail to alert those with adverse

21  viewpoints to investigate and to come forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen.*

22  *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d

23  1338, 1352 (9th Cir. 1980)).

24       The proposed notice in this case satisfies each of these requirements.  (*See* Doc. 50.)  As

25  such, the Court finds that the proposed notice is appropriate.  (*Id.*)

26       The Court also finds that the procedures in the Proposed Settlement Agreement regarding

27  notifying the class members are largely adequate.  (*See* Doc. 49 ¶ 3.4.)  However, the Court will

28  require Plaintiff to file a motion for final certification of the class and final approval of the

settlement. The Court cautions Plaintiff that he must satisfy the requirements relating to final certification of the class and final approval of the settlement in order for the Court to approve the final settlement in this matter. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with [Federal Rule of Civil Procedure 23]—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (providing a non-exhaustive list of factors the court must balance to determine whether a settlement is "fundamentally fair, adequate, and reasonable").

## VI.   *Conclusion*

For the reasons provided herein, the Court ORDERS the following:

(1)   Plaintiff's Motion, (Doc. 34), is GRANTED;

(2)   Preliminary class certification is APPROVED;

(3)   Plaintiff's counsel, (*see* Doc. 49 ¶ 1.2), are APPOINTED as class counsel;

(4)   Plaintiff is APPOINTED as the class representative;

(5)   The Proposed Settlement Agreement, (Doc. 49), is APPROVED on a preliminary basis as fair and adequate;

(6)   The Proposed notice to class members, (Doc. 50), is APPROVED;[5]

(7)   The proposed form and method of notice to the class members, (*see, e.g.*, Doc. 49 ¶ 3.4), is APPROVED, with the exception that the Court shall require Plaintiff to file a motion for final certification of the class and final approval of the settlement; and

(8)   Rust Consulting is APPROVED as the settlement administrator.

The Court further ORDERS the following as the schedule for this matter:

---

[5] The Court notes that the proposed notice to class members includes certain blank fields pending the Court's determinations in this Order. (*See* Doc. 50.) The Court DIRECTS Plaintiff to include the appropriate language in these blank fields to reflect the Court's findings and rulings in this Order prior to the settlement administrator sending this notice to the class members.

(1)  Defendants shall provide the "Class Information," as that term is defined in the Proposed Settlement Agreement, (*see id.* ¶ 1.5), to the settlement administrator by no more than twenty-one days following the entry of this Order;

(2)  Within fifteen days of its receipt of the "Class Information," the settlement administrator shall mail the notice of settlement, (Doc. 50), to the class members by regular first class U.S. mail;

(3)  The last day for the class members to submit timely requests for exclusion from the class or objections to the Proposed Settlement Agreement shall be 45 days following the settlement administrator's mailing of the notices (the "Response Deadline");

(4)  Plaintiff shall file a motion for final certification of the class and final approval of the settlement by no later than 60 days following the Response Deadline; and

**(5)**  The Court shall hold a hearing regarding final certification of the class and final approval of the settlement on **September 20, 2017, at 9:30 a.m.**

IT IS SO ORDERED.

Dated:   **March 20, 2017**                            **/s/ Sheila K. Oberto**
                                                         UNITED STATES MAGISTRATE JUDGE