# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

KARL VAN LITH,

            Plaintiff,

    v.

iHEARTMEDIA + ENTERTAINMENT, INC., et al.,

            Defendants.

_____/

Case No. 1:16-cv-00066-SKO

**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL CERTIFICATION AND APPROVAL OF CLASS ACTION SETTLEMENT AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE PAYMENT**

**(Docs. 52 & 53)**

      Pending before the Court are Plaintiff's Unopposed Motion for Final Certification and Approval of Class Action Settlement (the "Motion for Certification and Approval"), (Doc. 52), and Plaintiff's Unopposed Motion for Attorneys' Fees, Costs and Service Payment (the "Motion for Fees"), (Doc. 53). For the reasons provided herein, the Court GRANTS both the Motion for Certification and Approval, (Doc. 52), and the Motion for Fees, (Doc. 53).

## I. BACKGROUND

      The class-related claims in this matter arise out of wage statements Defendants provided to Plaintiff and the proposed class members—who are employees of Defendants—which Plaintiff alleges contained inaccurate information.

**A.      The Complaint**

Plaintiff filed the currently operative Second Amended Class Action and Individual Complaint (the "Complaint") on August 19, 2016.  (Doc. 28 at 1–22.)  In addition to the allegations relating solely to Plaintiff, the Complaint also includes California Private Attorney General Act ("PAGA") allegations and class action allegations.  (*See id.* ¶¶ 40–58.)

The Complaint includes the following two claims against all Defendants on behalf of the proposed class: (1) First Cause of Action—failure to furnish accurate wage statements in violation of California Labor Code Section 226(a); and (2) Second Cause of Action—failure to maintain accurate wage statements in violation of California Labor Code Section 226(a).  (*Id.* ¶¶ 59–68.) The Complaint also includes the following six claims against all Defendants on behalf of only Plaintiff: (1) Third Cause of Action—failure to pay overtime in violation of California Labor Code Sections 510 and 1198, as well as "the applicable IWC Wage Order(s)"; (2) Fourth Cause of Action—failure to pay minimum wage in violation of California Labor Code Section 1197; (3) Fifth Cause of Action—failure to provide rest breaks in violation of California Labor Code Section 226.7 and "[t]he applicable Wage Order(s)"; (4) Sixth Cause of Action—failure to provide meal breaks in violation of California Labor Code Sections 226.7 and 512(a), as well as "the applicable Wage Order(s)"; (5) Seventh Cause of Action—failure to timely pay wages in violation of California Labor Code Section 204; and (6) Eighth Cause of Action—failure to pay wages upon cessation of employment in violation of California Labor Code Section 203.  (*Id.* ¶¶ 69–100.)

**B.      The Proposed Settlement Agreement**

Plaintiff filed the relevant Joint Stipulation re: Class Action Settlement and Release (the "Settlement Agreement") on February 22, 2017.  (Doc. 49.)  The Settlement Agreement provides the following pertinent definitions:

> 1.3     "Class Counsel Costs Payment" means the expenses and costs incurred by Class Counsel for Class Counsel's litigation and resolution of this Action, as approved by the Court, which may not exceed Five Thousand Dollars ($5,000).

> 1.4     "Class Counsel Fees Payment" means the attorneys' fees for Class Counsel's litigation and resolution of this Action, as approved by the Court, which may not exceed Eighty-Five Thousand and Five Hundred Dollars ($85,500).

. . .

1.6     "Class Members" mean all persons employed by Defendants in the State of California during the Class Period who have not signed an individual settlement agreement as of the date of entry of the Court's Preliminary Approval Order.  These individuals are members of the class to be conditionally certified by the Court pursuant to this Settlement and will remain members of the Class if they do not properly elect to exclude themselves from this Settlement, pursuant to the terms of this Settlement Agreement.

1.7     "Class Period" means the period from December 7, 2014 through and including the Preliminary Approval Date.

. . .

1.10     "Defendants" means iHeartMedia + Entertainment, Inc. and Capstar Radio Operating Company and iHeartMedia, Inc.

. . .

1.15     "Individual Settlement Payment" means the amount payable from the Net Distribution Fund to each Class Member who does not submit a timely and valid [r]equest for [e]xclusion.  The Individual Settlement Payment shall be calculated pursuant to Paragraph 3.5.4 herein and each Class Member will receive at least $25, which is the minimum payment.

1.16     "Net Distribution Fund" means the Total Settlement Amount, less the amount that the Court approves for the PAGA Payment, Plaintiff's Service Payment, Plaintiff's Settlement Payment, the Class Counsel Fees Payment, the Class Counsel Costs Payment, and Settlement Administrator Costs.  This amount is estimated at One Hundred Seventy-One Thousand, Five Hundred Dollars ($171,500).

. . .

1.19     "PAGA Payment" means the portion of the Total Settlement Amount that is allocated to the PAGA Claims as civil penalties, pursuant to California Labor Code section 2698 *et seq*, and as approved by the Court.  The PAGA Payment is Ten Thousand Dollars ($10,000), seventy-five percent (75%) of which (i.e. $7,500) will be remitted to the California Labor Workforce Development Agency and twenty-five percent (25%) of which (i.e. $2,500) will be distributed to Class Members as part of the Net Distribution Fund.

1.20     "Settled PAGA Claims" means the claims for civil penalties that Plaintiff has settled on behalf of himself and all of Defendants' other current and former employees in the state of California under the Labor Code Private Attorneys General Act of 2004 in exchange for the consideration provided by this Settlement Agreement.  The Settled PAGA Claims include: the right to pursue and/or ability to

collect civil money penalties under . . . PAGA for alleged violations of Labor Code sections 201, 202, 203, 204, 226, 226.7, 510, 512, 558 and 1198.5, including any claim for attorney's fees and costs. The Settled PAGA Claims do not include other potential claims that may arise under Labor Code sections 201, 202, 203, 204, 226.7, 510, 512, 558 and 1198.5.

. . .

1.25 "Preliminary Approval Order" means the Court's entry of a Preliminary Approval Order preliminarily approving this Settlement . . . .

1.26 "Released Class Claims" means the claims that Plaintiff and Class Members are fully releasing in exchange for the consideration provided by this Settlement Agreement. The Released Claims include all liabilities and causes of action of every nature and description, whether known or unknown, actually alleged in the Action, or that could have been alleged in the Action based on the allegations in the Second Amended Complaint, related in any way to the wage statements that allegedly failed to comply with Labor Code section 226(a), including claims for statutory penalties and civil penalties, as well as damages, interest and attorney's fees and costs.

1.27 "Released Parties" means Defendants and their past, present and/or future, direct and/or indirect parent companies, subsidiaries, affiliates, related entities, divisions and each of their respective officers, directors, managers, members, heirs, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, predecessors, successors, and/or assigns.

. . .

1.30 "Service Payment" means the amount that the Court approves to be paid to [Plaintiff], for his efforts in assisting with the prosecution of the Action and as consideration for executing this Settlement Agreement and releasing his claims against Defendants in an amount not to exceed Three Thousand Dollars ($3,000).

. . .

1.32 "Settlement Administration Costs" means the costs incurred by the Settlement Administrator and approved by the Court from the Total Settlement Amount. Such Settlement Administration Costs may not exceed Fifteen Thousand Dollars ($15,000).

. . .

1.35 "Total Settlement Amount" means Three Hundred Thousand Dollars ($300,000), which is the maximum amount that Defendants are obligated to pay under this Settlement Agreement in order to resolve and settle this Action, subject to the Court's approval.

(*Id.* at 3–7.)

4

Under the terms of the Settlement Agreement, the Total Settlement Amount of $300,000 is "the maximum amount payable by Defendants." (*Id.* ¶ 3.1.) This is the total amount payable by Defendants under the Settlement Agreement to resolve all claims, payments, fees, and costs. (*See id.*)

As to the payments for each individual class member, the Settlement Agreement provides that Individual Settlement Payments "will be paid from the Net Distribution Fund and shall be calculated pursuant to Paragraph 3.5.4 herein." (*Id.* ¶ 3.5.3.) Paragraph 3.5.4, in turn, provides the following as to the calculation of the Individual Settlement Payments:

> All Class Members who do not submit a valid and timely [r]equest for [e]xclusion will receive an Individual Settlement Payment which will be at least $25. The amount of the Individual Settlement Payment will be calculated by assigning a dollar value to each pay period worked by all Class Members during the Class Period (who do not submit a timely and valid [r]equest for [e]xclusion from the Settlement), as determined from Class Members' hire, transfer, and termination dates, and payroll/time data found in Defendants' records. More specifically, the dollar value of each pay period will be calculated by dividing the Net Distribution Fund by the total number of pay periods worked by Class Members during the Class Period (rounded up). If a Class Member's Individual Payment is less than $25 than that individual will be paid at least $25. Each Class Member's Individual Settlement Payment will then be determined by multiplying the total number of pay periods the Class Member worked during the Class Period (rounded up) by the dollar value of each pay period (which will be adjusted depending on the number of minimum payments).

(*Id.* ¶ 3.5.4.)

The Settlement Agreement also provides the following as to attorneys' fees and costs for the class counsel:

> Defendants agree to take no position regarding any application or motion by Class Counsel for attorneys' fees not to exceed Eighty-Five Thousand Five-Hundred Dollars ($85,500). Defendants further agree not to take a position regarding any application or motion by Class Counsel for Attorneys' costs not to exceed Five Thousand Five Hundred [sic] Dollars ($5,000). . . . This Settlement is not contingent upon the Court approving Class Counsel any particular amount in attorneys' fees and costs. In the event that the Court approves less than the full amount requested for the Class Counsel Fees Payment and Class Counsel Costs Payment, the un-approved amount will be made available for distribution to Class Members as part of the Net Distribution Fund.

(*Id.* ¶ 3.5.9.)

Finally, the Settlement Agreement provides that the parties "stipulate and agree to the certification of this [class action] for purposes of [s]ettlement only." (*Id.* ¶ 2.2.) The Settlement Agreement further states that, "[s]hould the [s]ettlement not become final and effective as herein provided, class certification shall immediately be set aside (subject to further proceedings on motion of any [p]arty to certify or deny certification thereafter)." (*Id.*)

**C.      Preliminary Approval, Notice to the Class, and the Present Motions**

By its order entered on March 20, 2017 (the "Preliminary Approval Order"), the Court provisionally certified the proposed class and granted preliminary approval of the settlement. (Doc. 51.) "On or about April 10, 2017, [c]ounsel for . . . Defendants provided" the settlement administrator, Rust Consulting, Inc. (the "Settlement Administrator"), "with a mailing list containing the" class members' "full names, last known addressees, social security numbers, weeks of employment during the Class Period and current employment statuses." (Doc. 52, Ex. 5 ¶ 7.) The Settlement Administrator "processed and updated" the class members' "mailing addresses . . . utilizing the National Change of Address Database . . . maintained by the U.S. Postal Service." (*Id.* ¶ 8.)

On April 25, 2017, the Settlement Administrator mailed notices to the 495 potential class members identified by Defendants. (*Id.* ¶ 9.) The Settlement Administrator provided the following description as to the outcome of its efforts to notify the class of this proposed settlement:

> As of [August 2, 2017], 22 Notices have been returned as undeliverable for the first time on or before the June 9, 2017 postmark deadline. Of the 22 Notices returned as undeliverable, [the Settlement Administrator] performed 22 address traces on Notices returned as undeliverable for the first time. The address trace utilizes the [c]lass [m]ember's name, previous address and Social Security Number for locating a current address. Of the 22 traces performed, 16 more current addresses were obtained and Notices were promptly re-mailed to those [c]lass [m]embers via First Class mail. Of the 22 traces performed, [the Settlement Administrator] did not obtain updated addresses for six . . . undeliverable Notices. Of the 16 Notices mailed to a more current address identified from trace, three . . . Notices were returned to [the Settlement Administrator] as undeliverable a second time. As of [August 2, 2017], nine . . . Notices remain undeliverable.

. . .

6

As of [August 2, 2017], [the Settlement Administrator] received two . . . written Requests for Exclusion.

. . .

As of [August 2, 2017], [the Settlement Administrator] received zero . . . Notice of Objections.

(*Id.* ¶¶ 10, 12–13.)

On August 8, 2017, Plaintiff filed both the Motion for Certification and Approval, (Doc. 52), and the Motion for Fees, (Doc. 53). Defendants have not filed an objection to either of these motions to date.

On September 20, 2017, the Court held a final approval and fairness hearing (the "Hearing") regarding the Motion for Certification and Approval, (Doc. 52), and the Motion for Fees, (Doc. 53). No one appeared at the Hearing to object to either motion. Thus, both motions are fully briefed and argued and ready for disposition.

## II.    LEGAL BACKGROUND

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

"Procedurally, the approval of a class action settlement takes place in two stages." *Id.* "In the first stage of the approval process, 'the court preliminarily approve[s] the [s]ettlement pending a fairness hearing, temporarily certifie[s] the [c]lass . . . , and authorize[s] notice to be given to the [c]lass.'" *Id.* at 658–59 (quoting *West v. Circle K Stores, Inc.*, No. 040438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006)); *see, e.g.*, *Vu v. Fashion Inst. of Design & Merch.*, CASE NO.: CV 14-08822 SJO (Ex), 2016 WL 6211308, at *2 (C.D. Cal. Mar. 22, 2016) ("Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." (alteration in original) (quoting *Nat'l Rural Telecomms.*

*Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004))). At this first stage, the court "'determine[s] whether a proposed class action settlement deserves preliminary approval' and lay[s] the ground work for a future fairness hearing." *Alberto*, 252 F.R.D. at 659 (quoting *DIRECTV, Inc.*, 221 F.R.D. at 525).

The second stage—the fairness hearing—occurs "after notice is given to putative class members." *Id.* At this hearing, "the court . . . entertain[s] any . . . objections" from the putative class members as to "(1) the treatment of th[e] litigation as a class action and/or (2) the terms of the settlement." *Id.* (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). "Following the fairness hearing, the court . . . make[s] a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon." *Id.* (citing *DIRECTV, Inc.*, 221 F.R.D. at 525).

The present final approval stage requires two separate inquiries "where, as here, 'parties reach a settlement agreement prior to class certification.'" *Alberto v. GMRI, Inc.*, No. CIV. 07-1895 WBS DAD, 2008 WL 4891201, at *2 (E.D. Cal. Nov. 12, 2008) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). Specifically, "courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Id.* (alterations in original) (quoting *Staton*, 327 F.3d at 952). The Court shall address each inquiry, in turn.

### III. FINAL CERTIFICATION

#### A. Overview of Analysis

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "To be eligible for certification, the proposed class must be 'precise, objective, and presently ascertainable.'" *Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *3 (E.D. Cal. Feb. 22, 2016) (quoting *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D. Cal. Apr. 19, 2010)).

Further, "[i]n order to justify" use of the class action device, "'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 348–49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Federal Rule of Civil Procedure 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id.* at 349.

Rule 23(a) provides "four threshold requirements applicable to all class actions": (1) "numerosity (a 'class [so large] that joinder of all members is impracticable')," (2) "commonality ('questions of law or fact common to the class')," (3) "typicality (named parties' claims or defenses 'are typical . . . of the class')," and (4) "adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting Fed. R. Civ. P. 23(a)). "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614.

"Although the parties in this case have stipulated a settlement class exists" solely for purposes of settlement, "the court must nevertheless undertake the Rule 23 inquiry independently." *Pointer*, 2016 WL 696582, at *3 (citing *West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *1–2 (E.D. Cal. June 13, 2006)). "The parties cannot 'agree to certify a class that leaves any one requirement unfulfilled,' and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (quoting *Berry v. Baca*, No. 01–02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005)). Indeed, "the court 'must pay undiluted, even heightened attention to class certification requirements' because, unlike in a fully litigated class action suit, the court will not have future opportunities 'to adjust the class, informed by the proceedings as they unfold.'" *Alberto v. GMRI, Inc.*, No. CIV. 07-1895 WBS DAD, 2008 WL 4891201, at *2 (E.D. Cal. Nov. 12 2008) (citations omitted). Ultimately, "[a]lthough a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, the court must conduct a rigorous inquiry before certifying a class." *Id.* at *3

(citations omitted).  Consequently, the Court shall address each of the pertinent factors under Rule 23.

In the Preliminary Approval Order, the Court found that the requirements pertaining to the existence of a class, commonality, typicality, and adequacy of representation were all satisfied. (*See* Doc. 51 at 11–12, 13–19.)  Following an inquiry from the Court, the parties stated at the Hearing that there were no subsequent developments in this litigation that would disturb the Court's prior findings as to these requirements.  Further, the Court is not otherwise aware of any developments that would alter these findings.  Consequently, the Court finds that the requirements relating to the existence of a class, commonality, typicality, and adequacy of representation are all satisfied in this case.

**B.    Numerosity**

"To meet the numerosity requirement of Rule 23(a), a class must be 'so numerous that joinder of all members is impracticable.'"  *Scott-George v. PVH Corp.*, No. 2:13-cv-00441-TLN-DAD, 2015 WL 7353928, at *3 (E.D. Cal. Nov. 20, 2015) (quoting Fed. R. Civ. P. 23(a)(1)).  This impracticability requirement "does not equate to impossible."  *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008) (citations omitted).  Instead, this requirement "means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable."  *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12–cv–03035–GEB–JFM, 2013 WL 4056285, at *4 (E.D. Cal. Aug. 12, 2013) (quoting *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)).

"The numerosity requirement includes no specific numerical threshold" and "[t]he [c]ourt must examine the specific facts of each case."  *Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 651 (E.D. Cal. 2009) (citing *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  "Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is 'large in numbers.'"  *Campbell*, 253 F.R.D. at 594 (quoting *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982)).  Indeed, "[c]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."  *McKeen-Chaplin*, 2013 WL 4056285, at *4 (quoting *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294,

300 (E.D. Cal. 2011)); *see, e.g.*, *Andrews Farms*, 258 F.R.D. at 651 ("Generally, 40 or more members will satisfy the numerosity requirement." (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995))); *cf. Campbell*, 253 F.R.D. at 594 ("While there is no set number of members required, courts have generally found classes numbering in the hundreds to be sufficient to satisfy the numerosity requirement." (citations omitted)).

In the present case, the proposed class includes all employees of Defendants in the State of California from December 7, 2014 through and including the date of the Court's Preliminary Approval Order—February 22, 2017. (Doc. 52, Ex. 1 at 13; *see also* Doc. 49 ¶ 1.6 (defining the term "Class Members").) Plaintiff states that the proposed class includes 493 total participating members. (*Id.* at 14–15.) The Court finds that this potential class size satisfies the numerosity requirement. *See, e.g.*, *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474, 2016 WL 7426115, at *4 (E.D. Cal. Dec. 22, 2016) (finding "that [a] potential class consist[ing] of 430 members" was "sufficient to satisfy the numerosity requirement of Rule 23(a)(1)").

## C.     The Requirements of Rule 23(b)(3)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see, e.g.*, *McKeen-Chaplin*, 2013 WL 4056285, at *2 ("A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." (citation omitted)). In the present case, Plaintiff asserts that the class action format is appropriate under Rule 23(b)(3). (*See, e.g.*, Doc. 34, Ex. 1 at 17; Doc. 52, Ex. 1 at 21–22.)

"Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable." *Amchem Prods., Inc.*, 521 U.S. at 615 (citation omitted). "[A] class must meet two requirements beyond the Rule 23(a) prerequisites" to "qualify for certification under Rule 23(b)(3)": (1) "[c]ommon questions must 'predominate over any questions affecting only individual members,'" and (2) "class resolution must be 'superior to the

other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). "Rule 23(b)(3) includes" the following "nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria": (1) "the interest of members of the class in individually controlling the prosecution or defense of separate actions," (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and (4) "the difficulties likely to be encountered in the management of a class action." *Id.* at 615–16 (citation omitted). However, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

### 1. Predominance

The Court found that the predominance requirement was satisfied in the Preliminary Approval Order, but noted that "[t]hese claims must . . . be substantiated by evidence before the class is certified." (Doc. 51 at 22 (quoting *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *8 (E.D. Cal. June 30, 2016)).) The Court therefore now addresses the predominance inquiry.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (quoting *Amchem Prods., Inc.*, 521 U.S. at 623). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)). "While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis." *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *6 (E.D. Cal. Dec. 22, 2016) (citations omitted); *see, e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." (quoting *Comcast Corp. v.*

*Behrend*, 133 S. Ct. 1426, 1432 (2013))). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022. "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.*

Ultimately, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation omitted). "Settlement benefits cannot form part of a Rule 23(b)(3) analysis; rather the examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" *Id.* (quoting *Amchem Prods., Inc.*, 521 U.S. at 623).

Here, the record reflects the following pertinent considerations: (1) "all Class Members received the same type of wage statements from Defendants that Plaintiff contends were inaccurate," (2) "the alleged inaccuracies in the wage statements are identical with respect to all Class Members," and (3) "all Class Members could seek the same penalties under Labor Code section 226(e) and . . . PAGA." (Doc. 52, Ex. 2 ¶ 13.) These considerations support a finding of predominance.[1] *See, e.g.*, *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (finding that the predominance inquiry was satisfied where the plaintiffs "established" that the defendant "failed to record meal breaks" or provide members of the class "with accurate itemized wage statements" and the defendant did not otherwise "dispute [the] plaintiffs' allegation that these are class-wide practices"). The Court therefore finds that the predominance requirement is satisfied in this case.

---

[1] As the Court noted in the Preliminary Approval Order, the settlement payment may present individualized issues insofar as each member of the class will receive individualized settlement payments. (*See* Doc. 51 at 21–22.) However, "individual issues regarding damages will not, by themselves, defeat certification under Rule 23(b)(3)." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 664 (E.D. Cal. 2008) (citation omitted). Further, to the extent there are "idiosyncratic differences" between the facts applicable to each class member, those differences "are not sufficiently substantive to predominate over the shared claims." *Id.* (citation omitted).

2.     Superiority

The Court found that the second requirement—superiority—was satisfied in the Preliminary Approval Order.  (*See* Doc. 51 at 22–23.)  The parties stated at the Hearing that there have been no subsequent developments in this case that would disturb this finding, and the Court is not otherwise aware of any such developments.  As such, the Court finds that the superiority requirement is satisfied here.

In summary, the Court finds that all of the pertinent requirements of Rule 23 are satisfied in this case.  Accordingly, the Court shall grant final class certification.

## IV.     APPROVAL OF SETTLEMENT

The Court now turns to the fairness of the proposed settlement.  *See, e.g.*, *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) ("[W]here . . . 'parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement.'" (third and fourth alterations in original) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003))).  For the following reasons, the Court approves the proposed settlement.

## A.     Overview of Analysis

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citation omitted).  The district court does not "have the ability to delete, modify or substitute certain provisions."  *Id.* (citation omitted).  Instead, "[t]he settlement must stand or fall in its entirety."  *Id.* (citation omitted).

In determining whether a settlement is "fundamentally fair, adequate, and reasonable," the district court must "balance[e] . . . several factors which may include, among others, some or all

of" the following: (1) "the strength of plaintiffs' case," (2) "the risk, expense, complexity, and likely duration of further litigation," (3) "the risk of maintaining class action status throughout the trial," (4) "the amount offered in settlement," (5) "the extent of discovery completed," (6) "the stage of the proceedings," (7) "the experience and views of counsel," (8) "the presence of a governmental participant," and (9) "the reaction of the class members to the proposed settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "[W]here the court is '[c]onfronted with a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010))). "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[D]istrict courts have wide discretion in assessing the weight and applicability of each factor." (citation omitted)).

In engaging in this analysis, "[t]he court need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice*, 688 F.2d at 625). Nonetheless, "when (as here) the settlement takes place before formal class certification, settlement approval requires a higher standard of fairness." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted). "The reason for more exacting review of class settlements reached before formal class certification is to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (citation omitted).

Finally, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice*, 688 F.2d at 625 (citations omitted). Indeed, "[g]reat weight is accorded to the district judge's views because . . . . [she] is on the firing line and can evaluate the action accordingly." *Chem. Bank*, 955 F.2d at 1291 (citation omitted).

**B.      Notice was Adequate**

As an initial matter, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624. Further, "the notice must indicate that a dissident can object to the settlement and to the definition of the class," "each objection must be made a part of the record," "those members raising substantial objections must be afforded an opportunity to be heard with the assistance of privately retained counsel if so desired, and a reasoned response by the court on the record," and "objections without substance and which are frivolous require only a statement on the record of the reasons for so considering the objection." *Id.* (citations omitted).

In the Preliminary Approval Order, the Court approved the parties' proposed plan for providing notice to potential class members. (*See* Doc. 51 at 32.) Following preliminary approval, counsel for Defendants provided the information for the potential class members to the Settlement Administrator. (*See* Doc. 52, Ex. 5 ¶ 7.) The Settlement Administrator then sent notices to each of the potential class members by first class mail. (*Id.* ¶ 9.) Of the 495 potential class members, twenty two notices were returned as undeliverable. (*Id.* ¶ 10.) The Settlement Administrator performed an "address trace" to identify the current addresses of the potential class members whose notices were returned as undeliverable and obtained sixteen current addresses for these individuals. (*Id.*) Following these efforts, a total of nine notices "remain undeliverable" out of the total of 495 potential class members. (*Id.*)

At the Hearing, the Court inquired with the parties as to whether any further efforts may yield current addresses for the individuals corresponding to the remaining nine undelivered notices. The parties stated that further efforts were not likely to yield positive results.

Courts have found that similar efforts by settlement administrators to provide notices to potential class members were sufficient at the final approval stage. *See, e.g.*, *Garcia v. City of King City*, Case No. 14-cv-01126-BLF, 2017 WL 363257, at *5 (N.D. Cal. Jan. 25, 2017) (finding that notice was adequate where the settlement administrator made multiple attempts to provide notice to all 241 potential class members, but "35 notices were" nonetheless "returned as undeliverable from all the mailed-out notices"); *Hawthorne v. Umpqua Bank*, Case No. 11–cv– 06700–JST, 2015 WL 1927342, at *2 (N.D. Cal. Apr. 28, 2015) (finding that notice was adequate where the administrator made multiple attempts to mail notices to potential class members and "perform[ed] address traces" where necessary, which ultimately resulted in "92.9% of the class members" receiving the notice); *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (finding that notice was adequate where the settlement administrator "mailed notice of the settlement to the last known address of all class members" and "performed an advanced search" on individuals whose notice was returned as undeliverable). The Court agrees with these decisions and finds that the Settlement Administrator's repeated efforts to provide the notices to each and every potential class member were sufficient and did not systematically omit any class members or groups of class members. The Court is also persuaded that further efforts are unlikely to successfully provide notice to the remaining nine class members. The Court therefore finds that notice was adequate in this case. *See, e.g.*, *Quevedo v. Dole Food Co.*, No. 1:01-CV-6443 OWW SMS, 2005 WL 3783455, at *10 (E.D. Cal. Apr. 18, 2005) (finding that notice was adequate where, in relevant part, "[t]he notice and claims procedures did not systematically leave out any class members").

## C. Strength of Plaintiff's Case

"An important consideration is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Ontiveros*, 303 F.R.D. at 369 (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). "When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply*

*Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989)). "The court cannot reach such a conclusion . . . because evidence has not been fully presented." *Id.* (citation omitted). "Instead, the court is to evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.* (citation omitted).

Here, Plaintiff's counsel "believe[s] that there is substantial evidence from which the trier of fact could" rule in Plaintiff's favor on the merits of Plaintiff's class claims. (Doc. 52, Ex. 2 ¶ 14.) Nonetheless, there are mitigating considerations. In particular, "certification and success at trial would require establishing that the aforementioned violations were knowing and intentional and that" the class members "suffered injury as a result of the inaccurate wage statements." (*Id.*) Further, Plaintiff faces the risk of reduced penalties under PAGA "if the Court determine[s] that imposition of full penalties would be unjust, arbitrary, oppressive or confiscatory." (*Id.*)

The Court faces inherent obstacles in judging the strength of Plaintiff's case without the continuation of contested litigation. Indeed, at this juncture, the Court cannot make determinations regarding the merits of Plaintiff's claims that are informed by adversarial briefing or contested evidence in the record. However, such informed determinations are not necessary in the instant analysis. *See, e.g.*, *Adoma*, 913 F. Supp. 2d at 975 ("When assessing the strength of [the] plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." (citation omitted)).

Based on the available information in the record, the Court finds that Plaintiff's case likely has some measure of merit, but that it faces weaknesses that are inherent in this type of case. The Court therefore finds that the first consideration relating to the strength of Plaintiff's case weighs in favor of the final approval of the settlement.

**D.     Risks and Expense of Further Litigation**

"Another relevant factor is the risk of continued litigation against the certainty and immediacy of recovery from the [s]ettlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citation omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." *Adoma*, 913 F.

Supp. 2d at 976. "A court may 'consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.'" *Vasquez*, 266 F.R.D. at 489 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (alteration in original) (quoting *DIRECTV, Inc.*, 221 F.R.D. at 526).

In this case, the risk and expense of continued litigation is obvious. Class counsel noted that, absent settlement, they "anticipate[] significant discovery, a hotly contested motion for certification, an equally if not more difficult motion for summary judgment, a possible appeal to any ruling in favor of the class," and "a vigorous and lengthy trial of Plaintiff's claims." (Doc. 52, Ex. 1 at 29.) Further, "[e]ven if Plaintiff overcomes all the above obstacles and obtains a judgment for the [c]lass, the recovery might be of no greater value to" the class members than the proposed settlement. (*Id.*, Ex. 2 ¶ 17.) The apparent risk and expense of further litigation means that this factor clearly weighs in favor of approving the settlement. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013) (finding that the factor pertaining to the risk of future litigation weighed in favor of approval where "there remained significant procedural hurdles for the putative class to confront, including certification" and "there were significant risks in continued litigation and no guarantee of recovery").

**E.      Risk of Maintaining Class Action Status Throughout Trial**

The Court is not aware of any risks to the class maintaining its class-action status throughout trial.[2] This factor is therefore neutral. *See, e.g.*, *Barbosa*, 297 F.R.D. at 446 ("Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral." (citations omitted)).

---

[2] In his briefing, Plaintiff argues that there are numerous risks associated with maintaining the status of a class action, "including establishing that the alleged violations were knowing and intentional and that [the class members] suffered injury as a result of the inaccurate wage statements." (Doc. 52, Ex. 1 at 30.) The Court is not persuaded by this argument, as these considerations go to the merits of the class claims and not whether the class faces potential risks in maintaining its status as a class throughout trial.

**F.      Amount Offered in Settlement**

The next factor is the settlement amount.  "In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Ontiveros v. Zamora*, 303 F.R.D. 356, 370 (E.D. Cal. 2014) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)).  "[A] proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class."  *DIRECTV, Inc.*, 221 F.R.D. at 526 (citation omitted).  Indeed, "[i]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Ontiveros*, 303 F.R.D. at 370 (quoting *DIRECTV*, 221 F.R.D. at 527).

Here, the total class settlement amount (the Total Settlement Amount minus the service payment to Plaintiff) is $285,000.00 and the Net Distribution Fund for payment to the class members (the Total Settlement Amount minus all various fees and costs) is $169,000.00.  (Doc. 52, Ex. 5 ¶ 14.)  From this amount, "[t]he average estimated . . . award" for each class member is $342.80.  (*Id.*)  Further, none of the 493 participating class members filed an objection to these settlement terms.  (*See id.* ¶ 13.)

Although a larger award is "theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'"  *Barbosa*, 297 F.R.D. at 447 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).  Given the claims at issue in this case and the size of the participating class, the Court finds that this settlement amount is acceptable for purposes of the instant analysis.  The Court therefore finds that the factor pertaining to the settlement amount weighs in favor of approving the settlement.

**G.      Extent of Discovery Completed and Stage of Proceedings**

As to the factors pertaining to the extent of discovery completed and the stage of proceedings, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *DIRECTV, Inc.*, 221 F.R.D. at 528).  "A court is more likely to approve a settlement if

most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (quoting *DIRECTV, Inc.*, 221 F.R.D. at 527). Stated another way, "[w]hat is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citation omitted).

Plaintiff's counsel states that they "conducted a thorough investigation into the facts and claims alleged in this case" between "December 2015 and September 2016." (Doc. 52, Ex. 2 ¶ 6.) Plaintiff's counsel further states that this investigation included substantial initial and document discovery, as well as the deposition of Plaintiff. (*See id.*) Finally, Plaintiff's counsel states that they engaged in extensive, arms-length settlement discussions over a period of at least four months. (*See id.* ¶¶ 6–7.)

The Court finds that the parties engaged in sufficient discovery to permit genuine arms-length settlement negotiations. *See, e.g.*, *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013) ("While the parties did not fully complete discovery prior to settlement negotiations, but rather engaged in a process of informal discovery, approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." (citing *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007))); *cf. Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (finding that the parties engaged in sufficient discovery where the plaintiffs "conducted significant discovery of the underlying . . . documents in [the] case" and conducted interviews of "numerous" members of the potential class). Consequently, the Court finds that the factors pertaining to the extent of discovery completed and the stage of proceedings weigh in favor of approving the settlement.

**H.     Experience and Views of Counsel**

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Barbosa*, 297 F.R.D. at 447 (citation omitted). "Great weight is accorded to the recommendation of counsel, who are the

most closely acquainted with the facts of the underlying litigation." *Adoma*, 913 F. Supp. 2d. at 977 (citation omitted). "This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Id.* (citation omitted). "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *DIRECTV, Inc.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Here, the experience and views of counsel weigh in favor of approving the settlement. Plaintiff's counsel are experienced attorneys who currently "represent[] plaintiffs in at least nine employment class action cases and approximately 30" cases similarly alleging violations under PAGA. (Doc. 34, Ex. 2 at 3.) Further, Plaintiff counsel states that they "strongly believe that the proposed settlement is the right course of action and is a fair, adequate, and reasonable resolution of the [c]lass' disputes with Defendant and is preferable to continued litigation." (Doc. 52, Ex. 2 ¶ 17.) Given the experience of class counsel and their favorable view of the settlement, the Court finds that this factor weighs in favor of approval of the settlement.

## I.     Presence of a Governmental Participant

No governmental actor has participated in this litigation. Nonetheless, Plaintiff's operative complaint includes allegations under PAGA. (*See* Doc. 28 ¶¶ 40–47.) "Pursuant to . . . PAGA . . . , Cal. Lab. Code § 2699.3, California granted Plaintiff[] the right to stand in the shoes of the State of California to enforce these claims on behalf of the state and employees." *Vasquez*, 266 F.R.D. at 490. Consequently, "Plaintiff[] stand[s] as a proxy for the State," *id.*, and $7,500 of the final settlement amount will be paid to the State of California, (*see, e.g.*, Doc. 52, Ex. 5 ¶ 14). As the State of California will receive a portion of the settlement amount, this factor weighs in favor of approval of the settlement. *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (finding that this factor weighed in favor of approval where the plaintiff would share a portion of the settlement amount with the State pursuant to PAGA); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (same).

**J.      Reaction of the Class Members to the Proposed Settlement**

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 490 (E.D. Cal. 2010) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). "Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (citation omitted). Indeed, "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *DIRECTV, Inc.*, 221 F.R.D. at 529 (collecting cases).

Here, the potential class includes 495 members and only two of these individuals opted out of the proposed settlement. (Doc. 52, Ex. 5 ¶¶ 9 & 12.) As of this date, the Court is unaware of any objections filed by the remaining 493 participating class members. (*See, e.g.*, *id.* ¶ 13 (providing the settlement administrator's statement that, as of August 2, 2017, it had "received zero . . . [n]otice of [o]bjections" from the participating class members).) Further, no participating class members appeared at the Hearing to oppose the proposed settlement. Given the overall lack of opposition to the settlement from the class members, the Court finds that this factor weighs in favor of approval of the settlement.

In summary, the pertinent factors overwhelmingly weigh in favor of the approval of the proposed settlement.[3]   Accordingly, the Court finds that the settlement is fair, adequate, and reasonable under Rule 23(e).

## V.      ATTORNEYS' FEES

Class counsel also moves for approval of their attorneys' fees. (*See* Doc. 53.) For the reasons that follow, the Court approves class counsel's requested fees.

---

[3] In addition to the above factors, many courts also consider the factors pertaining to collusion on the part of class counsel—as identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011)—in cases where the parties reach settlement prior to formal class certification. *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258–59 (N.D. Cal. 2015). The Court addressed the *Bluetooth* factors in its Preliminary Approval Order and found that these factors did not indicate impermissible collusion. (*See* Doc. 51 at 27–29.) The Court is unaware of any subsequent developments in this litigation to disturb these findings. As such, the Court finds that the *Bluetooth* factors do not preclude approval of the settlement.

**A.      Standard**

Of course, "[l]awyers must eat, so they generally won't take cases without a reasonable prospect of getting paid." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Federal Rule of Civil Procedure 23(h) states that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

"In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating them." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262 (C.D. Cal. 2016) (citing *Mangold v. Cal. Pub. Util. Commc'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) and *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012)); *see, e.g., Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) ("A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." (citation omitted)); *Ebarle v. Lifelock, Inc.*, Case No. 15-cv-00258-HSG, 2016 WL 5076203, at *9 (N.D. Cal. Sept. 20, 2016) (stating that, as state law governed the plaintiff's claims, "it also governs the award of attorneys' fees" (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002))). As Plaintiff's "underlying . . . claim[s]" are "state law claim[s], this court must apply California law on attorneys' fees." *Phillips 66 Co. v. Cal. Pride, Inc.*, Case No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at *13 (E.D. Cal. July 6, 2017) (quoting *Suretec Ins. Co. v. BRC Constr., Inc.*, No. 2:11–cv–2813 KJM AC, 2013 WL 6199021, at *2 (E.D. Cal. Nov. 27, 2013)).

The California Supreme Court has "held that courts have discretion to choose among two different methods for calculating a reasonable attorney's fee award." *Spann*, 211 F. Supp. 3d at 1262 (citing *Lafitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016)). The first is the "percentage method," where "the fee" is calculated "as a percentage share of a recovered common fund or the monetary value of [the] plaintiffs' recovery." *Lafitte*, 1 Cal. 5th at 489. "This method is typically used" where, as here, "a common fund is created." *Spann*, 211 F. Supp. 3d at 1262 (citation omitted). *See generally Laffitte*, 1 Cal. 5th at 489 (describing "the common fund doctrine" as where "a class settlement agreement establishes a relief fund from which the attorney fee is to be drawn").

The second potential approach is "[t]he lodestar method, or more accurately the lodestar-multiplier method." *Laffitte*, 1 Cal. 5th at 489. Under the lodestar method, the fee is calculated "by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate," then "increas[ing] or decreas[ing]" the lodestar figure based on "a variety of . . . factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.* (citation omitted).

Under either approach, "[a] fee award of 25 percent is the benchmark award that should be given in common fund cases." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009) (citation omitted). Nonetheless, "[e]mpirical studies show that, regardless [of] whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Id.* (quoting *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)).

While courts have discretion in choosing between these two methods, "[o]ne way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). "For example, a crosscheck using the lodestar method 'can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate.'" *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011)). "If a comparison between the percentage and lodestar calculations produces an imputed multiplier far outside the normal range," thereby "indicating that the percentage fee will reward counsel for their services at an extraordinary rate even accounting for the factors customarily used to enhance a lodestar fee, the trial court will have reason to reexamine its choice of a percentage." *Laffitte*, 1 Cal. 5th at 504. "Thus, although not required, a lodestar cross-check may assist the court in evaluating the reasonableness of the . . . attorney's fees request." *Spann*, 211 F. Supp. 3d at 1264–65.

As the present situation involves a common fund arrangement, (*see, e.g.*, Doc. 49 ¶ 1.16 (describing the Net Distribution Fund)), the Court shall utilize the percentage method, *see, e.g.*, *Spann*, 211 F. Supp. 3d at 1262 (noting that the percentage method "is typically used" where "a common fund is created" (citation omitted)). However, the Court shall also exercise its discretion

to cross-check the result of the percentage method analysis by a lodestar-multiplier calculation. *See, e.g.*, *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *9 (E.D. Cal. Dec. 22, 2016) (noting that the "Ninth Circuit has recommended that district courts apply" either the "percentage of the fund" method or the "lodestar" method, "but cross-check the appropriateness of the amount by employing the other as well" (citing *In re Bluetooth*, 654 F.3d at 944)); *Laffitte*, 1 Cal. 5th at 506 ("[T]rial courts have discretion to conduct a lodestar cross-check on a percentage fee . . . .").

**B.      Percentage Method**

"In assessing whether the percentage requested is fair and reasonable" under the percentage method, "courts generally consider the following factors": (1) "the results achieved," (2) "the risk of litigation," (3) "the skill required," (4) "the quality of work performed," (5) "the contingent nature of the fee and the financial burden," and (6) "the awards made in similar cases." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)); *see, e.g.*, *Laffitte*, 1 Cal. 5th at 504 (approving the trial court's fee determination under the percentage method where the trial court "obtain[ed] additional information from class counsel on the risks and potential value of the litigation" and "carefully considered that information on contingency, novelty and difficulty together with the skill shown by counsel, the number of hours worked and the asserted hourly rates"). "As always, when determining attorneys' fees, the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1263 (C.D. Cal. 2016) (quoting *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *14 (N.D. Cal. Jan. 26, 2007)).

In this case, the pertinent factors weigh in favor of approving the requested attorneys' fees. As the Court previously found, counsel achieved a favorable result for the class and there was substantial risk associated with further litigation. Additionally, class counsel has sufficient relevant experience and they utilized that experience to obtain a positive result in this case. As to the quality of counsel's work, counsel has ably responded to the Court's numerous queries and the

Court is not otherwise aware of counsel providing substandard work product. Regarding the nature of the fee, counsel took risk in pursuing this litigation on a contingency fee basis, which certainly weighs in favor of approving the requested fees. *See, e.g.*, *Barbosa*, 297 F.R.D. at 449.

Finally, the requested attorneys' fees amount of $85,500 constitutes 30% of the total class settlement amount of $285,000.00 (the total settlement amount minus Plaintiff's service payment). (*See* Doc. 52, Ex. 5 ¶ 14.) This percentage exceeds the benchmark rate in California of 25%. *See, e.g.*, *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009) ("A fee award of 25 percent is the benchmark award that should be given in common fund cases." (citation omitted)). Nonetheless, courts have approved similar percentage awards for attorneys' fees in analogous cases. *See, e.g.*, *Deaver v. Compass Bank*, Case No. 13-cv-00222-JSC, 2015 WL 8526982, at *11–12 (N.D. Cal. Dec. 11, 2015) (33%); *Willner v. Manpower Inc.*, Case No. 11–cv–02846–JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (30%); *Ching v. Siemens Indus., Inc.*, Case No. 11–cv–04838–MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (30%); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) (29%); *Collins v. Cargill Meat Sols. Corp.*, No. 1:10–cv–00500 OWW MJS, 2011 WL 2580321, at *11 (E.D. Cal. June 28, 2011) (31.7%). *See generally Barbosa*, 297 F.R.D. at 449 ("[W]here recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate." (collecting cases)).

The Court thus finds that each of the pertinent considerations weigh in favor of approving the requested attorneys' fees under the percentage approach. The Court shall now cross-check this result with the lodestar approach.

## C.     Lodestar Cross-Check

As noted previously, the "lodestar" figure consists of "the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). As to the computation of hours, "trial courts must carefully review attorney documentation of hours expended." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). The Court must then exclude "hours that were not reasonably expended in pursuit of successful claims," *Harman v. City & Cty. of S.F.*, 158 Cal. App. 4th 407, 417 (2007) (citation omitted), "[a]ttorney

27

time spent on services which produce no tangible benefit for the client," *Meister v. Regents of Univ. of Cal.*, 67 Cal. App. 4th 437, 452 (1998), and "duplicative or excessive" work, *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006).

"Because time records are not required under California law . . . , there is no required level of detail that counsel must achieve." *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 699 (2014) (alteration in original) (quoting *PLCM Grp.*, 22 Cal. 4th at 1098). Indeed, "[i]t is well established that 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent." *Id.* at 698 (quoting *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375–76 (2009)).

Regarding the reasonable-rate determination, "[t]here is no requirement that the reasonable market rate mirror the *actual* rate billed." *Rankin*, 226 Cal. App. 4th at 463. Instead, "[t]he reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp.*, 22 Cal. 4th at 1095 (citations omitted). "Generally, the courts will look to equally difficult or complex types of litigation to determine which market rates to apply." *Rankin*, 226 Cal. App. 4th at 463 (citation omitted).

Courts in the Fresno Division of this District have found that the "current reasonable range of attorneys' fees" for cases litigated in the Eastern District of California's Fresno Division "is between $250 and $400 per hour." *Barkett v. Sentosa Props. LLC*, No. 1:14–CV–01698–LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (citing *Silvester v. Harris*, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014)). Within this range, "the highest rates [are] generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Id.* (quoting *Silvester*, 2014 WL 5797828, at *4). Additionally, "$300 is the upper range for competent attorneys with approximately a decade of experience." *Id.* (quoting *Silvester*, 2014 WL 5797828, at *4); *see also Silvester*, 2014 WL 7239371, at *4 (noting that courts in Fresno Division of this District "found that the accepted range is between $175 and $300 per hour" for "competent practitioners with less than ten years of experience" (citations omitted)). Courts in the Fresno Division of this District also previously

found that "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience." *Silvester*, 2014 WL 7239371, at *4 (citations omitted); *cf. Franco v. Ruiz Food Prods., Inc.*, No. 1:10–cv–02354–SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal assistants").

Finally, "[w]here the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. July 2, 2013) (citations omitted). Indeed, "because the lodestar is being used here as a cross-check, the court may use a rough calculation of the lodestar." *Id.* at 452 (citation omitted).

As to the number of hours class counsel spent on this matter, counsel provided a declaration stating that four professionals spent a total of 247.65 hours in litigating this case. (*See* Doc. 53, Ex. 2 ¶ 28.) In particular, class counsel states that the following professionals allocated time to this case: (1) Robert Wasserman, an attorney—153.75 hours; (2) Nicholas Scardigli, an attorney—.70 hours; (3) Vladimir Kozina, an attorney—92.60 hours; and (4) Anita Gorham, a paralegal—.60 hours. (*Id.*) This evidence is sufficient to support class counsel's request as to the total number of hours based on pertinent California case law and the nature of this analysis as only a cross-check. *See, e.g.*, *Rankin*, 226 Cal. App. 4th at 699 ("It is well established that 'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent." (quoting *Barrenechea*, 175 Cal. App. 4th at 1375–76)). Additionally, the Court is not aware of any information indicating that the number of requested hours is unreasonable. The Court therefore finds that the number of hours requested is reasonable.

The requested hourly rates, however, are not reasonable without the application of a multiplier. Class counsel requests the following rates: (1) Robert Wasserman, an attorney with experience since 2008—$608; (2) Nicholas Scardigli, an attorney with experience since 2006—$685; (3) Vladimir Kozina, an attorney with experience since 2012—$421; and (4) Anita Gorham, a paralegal—$175. (Doc. 53, Ex. 2 ¶ 28; *see also* Doc. 52, Ex. 3 ¶¶ 4–5 (describing the experience of Mr. Kozina); Doc. 53, Ex. 2 ¶¶ 32–33 (recounting the experience of Mr.

Wasserman); Doc. 56 ¶¶ 3–4 (describing the experience of Mr. Scardigli).)  These hourly rates greatly exceed the permissible ranges of rates for the Fresno Division of this District.  As noted above, "$300 is the upper range for competent attorneys with approximately a decade of experience." *Barkett*, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (quoting *Silvester*, 2014 WL 5797828, at *4).  Mr. Wasserman has just under a decade of experience, so his maximum permissible rate ($280) is about half of his requested rate of $608.  *See id.*  Mr. Scardigli has just over a decade of experience, so his maximum permissible rate ($320) is similarly about half of his requested rate of $685.  *See id.*  Mr. Kozina has approximately five years of his experience, so his maximum permissible rate ($250) is just over half of his requested rate of $421.  *See id.*  Finally, the permissible range for paralegals in the Fresno Division is $75 to $150, *see Silvester*, 2014 WL 7239371, at *4 (citations omitted), which is below the requested rate for Ms. Gorham of $175, (*see* Doc. 53, Ex. 2 ¶ 28).

Turning to the lodestar calculation, each professional's lodestar figure is as follows: (1) Mr. Wasserman—$43,050 (153.75 hours multiplied by a rate of $280 per hour); (2) Mr. Scardigli—$224 (.70 hours multiplied by a rate of $320 per hour); (3) Mr. Kozina—$23,150 (92.60 hours multiplied by a rate of $250 per hour); and (4) Ms. Gorham—$60 (.60 hours multiplied by a rate of $100 per hour).[4]  These calculations result in a total lodestar figure of $66,484.

The Court now addresses whether an adjustment to the lodestar figure is warranted.  After determining the lodestar amount, "[t]he lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (citation omitted).  These pertinent factors include "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Id.* (quoting *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 623–24

---

[4] The parties failed to provide evidence regarding Ms. Gorham's experience.  The Court therefore selects an hourly rate towards the lower side of the permissible range for paralegals in the Fresno Division—specifically, $100 per hour. *See Silvester v. Harris*, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014) (stating that "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience").

(1976)). "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." *Id.* (citation omitted). As to the types of permissible multipliers, California courts have noted that lodestar "[m]ultipliers can range from 2 to 4 or even higher." *Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 255 (2001) (citations omitted). Finally, as "the relevant factors are considered only after the lodestar figure has been determined . . . . an upward or downward adjustment from the lodestar figure will be far more common under California law than under federal law." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1173 (1998); *cf. Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 42 (2000) ("For example, certain factors California courts can use to enhance a lodestar award, such as the novelty and complexity of the issues, the special skill and experience of counsel, and the contingent nature of the recovery, cannot be used to increase an award in federal courts because they are presumed to be already incorporated into the lodestar figure." (citations omitted)).

Here, an upward adjustment is appropriate. Given the relatively early settlement of this case, class counsel expended a considerable amount of time litigating this action. (*See, e.g.*, Doc. 53, Ex. 2 ¶ 6.) Additionally, as noted above, class counsel was able to secure a positive outcome for the class. Finally, and importantly, class counsel accepted substantial risk in litigating this case on a contingency fee basis "with an expectation that at least a modest risk enhancement would be applied to any fee request." (*Id.*, Ex. 1 at 22.) These considerations weigh strongly in favor of applying a multiplier to the lodestar figure. *Cf. Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The district court *must* apply a risk multiplier to the lodestar when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky. Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." (citation omitted)). The Court therefore finds that the application of a multiplier is warranted.

The application of a relatively modest multiplier of two results in an adjusted lodestar of $132,968 (the original lodestar figure of $66,484 multiplied by two). This adjusted lodestar figure exceeds Plaintiff's requested rate of $85,500, which the Court found was supported by the

percentage method. As the lodestar calculation results in a figure that exceeds the result of the percentage method, the Court finds that the lodestar cross-check confirms that class counsel's fee request is reasonable. *See, e.g.*, *Ching v. Siemens Indus., Inc.*, Case No. 11–cv–04838–MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (finding that the lodestar cross-check supported awarding the requested rates where it exceeded the result of the percentage method).

In summary, the percentage method indicates that class counsel's requested fees are reasonable. Additionally, the lodestar cross-check supports this result. The Court therefore finds that Plaintiff's requested attorneys' fees are reasonable.

## VI. COSTS

Plaintiff also requests that the Court award costs. (*See, e.g.*, Doc. 53, Ex. 1 at 23.) Unlike the issue of attorneys' fees, which are governed by state law, "the award of costs is governed by federal law under Rule 54(d)" as "a general proposition." *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); *see, e.g.*, *United States v. Safeco Ins. Co. of Am.*, 116 F.3d 487, at *2 (9th Cir. 1997) ("As a general proposition, an award of costs is governed by federal law . . . under Rule 54(d)." (citations omitted)); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977) (applying federal law as to costs and California state law on the issue of attorneys' fees); *Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *14 (E.D. Cal. Oct. 4, 2016) ("In a diversity action, federal not state law controls the issue of costs." (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995))); *Am. Boat Racing Ass'n v. Richards*, No. 2:14–cv–1909–KJM–KJN, 2015 WL 1320956, at *8 (E.D. Cal. Mar. 24, 2015) ("[F]ederal law governs the award of costs even in a diversity action." (citing *DCI Sols. Inc. v. Urban Outfitters, Inc.*, No. 10cv0369–IEG (BGS), 2012 WL 1409610, at *2 (S.D. Cal. Apr. 23, 2012))). 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority."[5] *Grove v. Wells Fargo*

---

[5] Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Rule 54 provides "a decided preference for the award of costs to the prevailing party." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2005–06 (2012) (citation omitted). Nonetheless, "the 'discretion granted by Rule 54(d) is not a power to evade' the specific categories of costs set forth by Congress." *Id.* (quoting *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 438 (1987)). Instead, Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in § 1920." *Id.* (citation omitted).

*Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citation omitted). The costs that are taxable under Section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012). "Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." *Id.* "It comes as little surprise, therefore, that costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Id.* (citation omitted).

Here, class counsel requests total costs in the amount of $2,761.60. (*See, e.g.*, Doc. 53, Ex. 2 ¶ 31.) "These costs include postage, process server fees, court reporter fees, online research charges, filing fees, and Plaintiff's share of the mediator's fees." (*Id.*) These costs are properly recoverable by class counsel. *See, e.g.*, *Taniguchi*, 132 S. Ct. at 2006 (noting that recoverable costs under Section 1920 include "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts"); *McCarty v. Humphrey*, No. 2:13-cv-00431-KJM-AC, 2016 WL 4899194, at *6 (E.D. Cal. Sept. 15, 2016) (awarding "costs for filing fees, expert fees, process server fees, deposition fees, and online research fees"); *Rodriguez v. D.M. Camp & Sons*, No. 1:09–cv–00700–AWI–JLT, 2013 WL 2146927, at *16 (E.D. Cal. May 15, 2013) ("[C]osts 'including filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees . . . are routinely reimbursed.'" (quoting *Alvarado v. Nederend*, No. 1:08–cv–01099 OWW DLB, 2011 WL 1883188, at *10 (E.D. Cal. May 17, 2011))). As such, the Court finds that class counsel's requested costs of $2,761.60 are reasonable.

## VII.    SERVICE PAYMENT

Finally, Plaintiff, the class representative, requests a service fee in the amount of $3,000. (*See, e.g.*, Doc. 53, Ex. 1 at 23–26.) Of course, "named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the

course of the class action litigation." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (citation omitted). Courts "assess whether the requested incentive payment is excessive by balancing," *Dearaujo*, 2016 WL 3549473, at *11, the following non-exhaustive list of considerations: (1) "the actions the plaintiff has taken to protect the interests of the class," (2) "the degree to which the class has benefitted from those actions," (3) "the amount of time and effort the plaintiff expended in pursuing the litigation," and (4) "and reasonabl[e] fear[s of] workplace retaliation,'" *Staton*, 327 F.3d at 977 (alterations in original) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

These factors weigh in favor of approving Plaintiff's requested service fee. As the named plaintiff in this action, Plaintiff assisted counsel, "participat[ed] in formal and informal discovery," and sat "for . . . settlement negotiations." (Doc. 53, Ex. 2 ¶ 22.) The class certainly benefited from Plaintiff's efforts, as they secured the present settlement. Additionally, "Plaintiff took on substantial risk in bringing this class action," including "expos[ing] himself to notoriety," personal difficulties, and risking "damage to his professional reputation." (*Id.*) Finally, the requested service fee of $3,000 is well within—if not lower than—the range of permissible service fees for named plaintiffs in similar cases. *See, e.g.*, *Barbosa*, 297 F.R.D. at 455 (approving service fees of $5,000 for each of the two named plaintiffs); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012) (approving a service fee of $15,000); *Ozga v. U.S. Remodelers, Inc.*, No. C 09–05112 JSW, 2010 WL 3186971, at *3 (N.D. Cal. Aug. 9, 2010) (approving service fees of $10,000). Based on these considerations, the Court finds that Plaintiff's requested service fee of $3,000 is reasonable.[6]

## VIII. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

---

[6] While not addressed in Plaintiff's briefing, the settlement also includes a fee of $15,000 to the Settlement Administrator. (*See, e.g.*, Doc. 52, Ex. 1 at 15.) "Courts regularly award administrative costs associated with providing notice to the class." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (citation omitted). Additionally, the requested fee is consistent with or lower than fees paid to administrators in similar cases. *See, e.g.*, *Bellinghausen*, 306 F.R.D. at 266 (awarding a service fee of $16,500 to the "claims administrator"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 484 (E.D. Cal. 2010) (approving a $35,000 fee for the settlement administrator where the class consisted of 177 members). The Court therefore finds that the requested administration fee of $15,000 for the Settlement Administrator is reasonable.

1) The Motion for Certification and Approval, (Doc. 52), is GRANTED;

    a) The Court ORDERS that the settlement class, as identified in the Settlement Agreement, is formally certified under Federal Rule of Civil Procedure 23, with the class not including those individuals who validly and timely requested exclusion from the class under the terms provided in the Settlement Agreement;

    b) The Court FINDS that the form, manner, and content of the notice to the class meets the requirements of Federal Rule of Civil Procedure 23(c)(2);

    c) The Court FINDS that the settlement is fair, adequate, and reasonable, appears to be the product of arm's length and informed negotiations, and treats all members of the class fairly;

    d) The Court GRANTS final approval of the parties' Settlement Agreement;

    e) The Court ORDERS the parties to perform their obligations pursuant to the terms of the Settlement Agreement and this Order;

    f) The Court ORDERS that all class members who did not opt out of the Settlement Agreement have released certain claims against Defendants, as set forth in the Settlement Agreement;

2) The Court GRANTS the Motion for Fees, (Doc. 53);

    a) The Court ORDERS that class counsel shall be paid $85,500 in attorneys' fees and $2,761.60 in costs;

    b) The Court ORDERS that Plaintiff shall be paid a $3,000 service payment;

    c) The Court ORDERS that the Settlement Administrator shall be paid a $15,000 administration fee;

3) The Court ORDERS that—with the exception of any potential class members who validly and timely requested exclusion from the Settlement Agreement—this action is dismissed with prejudice, with all parties to bear their own fees and costs, except as set forth herein, in the prior orders of the Court, or in the Settlement Agreement; and

4) The Court ORDERS that it retains jurisdiction over the parties, including the class members, for the purpose of construing, enforcing, and administering this Order and

the Settlement Agreement, including any disagreements over the disbursement of the settlement fund.

IT IS SO ORDERED.

Dated: __September 29, 2017__                    __/s/ *Sheila K. Oberto*__
                                                UNITED STATES MAGISTRATE JUDGE